THE STATE OF CONNECTICUT *vs.* SAMUEL E. CAMPBELL.

Third Judicial District, Bridgeport, October Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

Contributory negligence, as such, is not available as a defense in a criminal prosecution for a homicide caused by the gross and reckless misconduct of the accused; although the decedent's behavior is admissible in evidence, and may have a material bearing upon the question of the defendant's guilt. If, however, the culpable negligence of the accused is found to be the cause of the decedent's death, the former is responsible under the criminal law, whether the decedent's failure to use due care contributed to his injury or not.

It is for the jury to determine, in view of all the evidence, what the accused might reasonably have assumed would be the conduct of the decedent, and what inferences he might have been justified in drawing from the decedent's actions; and therefore it is sufficient if the jury are told that in deciding upon the guilt of the accused, his conduct should be judged by the situation as it appeared to him at that time.

One who runs his automobile recklessly in a city street and thereby becomes unable to avoid hitting a pedestrian, is not entitled to an acquittal on a charge of manslaughter merely because, when the danger became imminent, he used his best efforts to prevent the collision.

In the present case the accused complained that the charge of the court left the jury at liberty to say whether he had acted in a criminal manner or not, unfettered by any rules of law. *Held* that in view of repeated instructions all through the charge, making gross, reckless, or wanton negligence the test of guilt, the jury could not have understood that they were at liberty to fix any standard of conduct they pleased.

One who, with reckless disregard for the safety of others, so negligently drives an automobile in a public street as to cause the death of another, is guilty of criminal homicide.

In the present case the jury were instructed that a traveler on the highway had no right to assume at any time or under any conditions that others were not also abroad, as a justification for conduct that would be reckless if he knew another was approaching. *Held* that while this general statement might be open to criticism in some cases, it could not have harmed the accused in the present instance, since it was apparent that other travelers were using the highway.

Having read § 11 of the Automobile Act of 1907, relating to excessive speed, to the jury at the request of the accused, the trial court also read § 12, requiring the driver of an automobile to reduce his speed and have his car under control upon approaching a pedestrian in the traveled portion of the highway. *Held* that the accused could not complain of this action, as each section might have a possible bearing on the case, depending upon the finding of the jury; and especially as the jury were clearly told that the fact that the accused drove his automobile at a greater speed than that prescribed by § 11, or that he failed to reduce his speed as required by § 12, did not necessarily establish the degree of negligence required to convict, which called for proof, beyond a reasonable doubt, of carelessness amounting in itself to a culpable disregard of the rights and safety of others.

A witness who has testified fully on his direct examination as to all the material circumstances connected with an accident, including what he did and what he did not do, and what the result would have been had he done differently, is not entitled to state, in addition, that he did all that could be done to avoid the accident, that being but an expression of his own opinion upon a question which is within the province of the jury to determine.

Argued November 3d, 1909—decided January 6th, 1910.

INFORMATION for manslaughter, brought to the Superior Court in New Haven County and tried to the jury before *Gager, J.;* verdict and judgment of guilty, and appeal by the accused for alleged errors in the rulings and charge of the court. *No error.*

*Jacob P. Goodhart* and *Robert C. Stoddard,* for the appellant (the accused).

*Arnon A. Alling,* State's Attorney, with whom was *Walter M. Pickett,* for the appellee (the State).

HALL, J. The information alleges that on the 14th of

The State v. Campbell.

November, 1908, the defendant, with force and arms, wilfully and feloniously made an assault upon one George P. Morgan of New Haven, and wilfully and feloniously forced, drove and propelled upon and against him a certain motor vehicle, which the defendant was propelling in the highway of said town, at an unlawful, high and dangerous rate of speed, and in an improper, reckless and negligent manner, and thereby so wounded and injured the said Morgan that he died on the following day; and that the accused did thereby feloniously and wilfully kill and slay the said Morgan. These averments charge the common-law crime of involuntary manslaughter by culpable negligence while engaged in a lawful act.

In support of this charge the State claimed to have proved that early in the afternoon of November 14th, 1908, the accused, who had for a long time been engaged in the automobile business, while driving, in company with two other persons, an automobile known as a "Rambler Touring Car" and weighing three thousand pounds, and while going in a southeasterly direction from Goffe Street toward York Street, upon Broadway, a much-traveled business street in the city of New Haven, at an excessive rate of speed, and at a rate greatly in excess of ten miles an hour, ran his car upon the deceased, the Rev. George B. Morgan of New Haven, as the said Morgan was crossing Broadway in an easterly direction, and so injured him that he died the following day.

The finding states that it appeared at the trial, from the testimony of the defendant, that he saw Mr. Morgan, either on the curb or just as Mr. Morgan was leaving it to cross the roadway, and that for that reason, and because the defendant was approaching the crossing, he sounded his automobile horn.

The State claimed to have shown that when the horn was blown the accused jumped as though startled or frightened, and ran in the same diagonal direction across the

street as he had been going; that thereupon, when he saw Morgan increasing his speed as he ran in front of him, as if intending to cross the street ahead of the automobile, the defendant turned his automobile slightly to the left, without attempting to stop it, and without diminishing its speed, so that the deceased and the automobile were apparently both directing their courses toward the same point on the easterly side of Broadway, each endeavoring to pass ahead of the other. The result was, as the State claimed, that the automobile was driven violently against the deceased, the forward part of the right rear wheel and the mudguard striking him and throwing him into the air to the height of the tonneau of the car, and causing him to so fall upon the back of his head that his skull was thereby fractured.

The defendant claimed to have proved that at no time was he driving his car at a fast rate of speed, nor faster than ten or twelve miles an hour; that when he arrived within about thirty-five feet of where Mr. Morgan was standing he saw him in a safe position on, or just off, the sidewalk; that the accused blew his automobile horn, and continued on in a straight line until he came substantially abreast of Mr. Morgan and to a point where he passed out of the range of the defendant's vision, when suddenly Mr. Morgan started diagonally across Broadway, running very fast, with his body bent forward and his head turned a little to the south; that when the accused saw him running in that manner he turned his machine quickly to the left to avoid him, and did all in his power to avoid him; that he could not have stopped his automobile in less than fifteen or eighteen feet; and that if he had applied the brakes, Mr. Morgan would still have collided with the machine, but further forward than he did.

The jury returned a verdict of guilty, and the court sentenced the accused to be confined at hard labor in the common jail for the term of ten months.

The State *v.* Campbell.

The thirty-five assigned reasons of appeal to this court relate to alleged refusals of the trial judge to charge the jury as requested by the defendant, to stated portions of the charge given, and to numerous rulings upon questions of evidence.

There are five of the fifteen requests to charge which it is said the court erroneously refused, namely, those numbered from 8 to 12. The 8th and 9th were substantially complied with. The 10th was, in substance, that the State must prove that Mr. Morgan's own negligence was not the proximate cause of the injury.

The rule of law concerning contributory negligence by the injured person, as a defense in civil actions for damages for personal injuries, had no application to this case. The State was required to prove the alleged unlawful act of the accused and its consequences, but not that the deceased exercised due care to avoid the consequences of that unlawful act. The court did not, either by its refusal to charge as thus requested, or by the language used, give the jury to understand, as the defendant claims it did, that the conduct of the deceased was eliminated from the case. The court properly said to the jury that the State must clearly show that the deceased's death was the direct result of the defendant's negligence, but that the injured man's conduct became material only as it bore upon the question of such negligence of the accused, and that if the culpable negligence of the accused was the cause of Mr. Morgan's death, the accused was responsible under the criminal law, whether Mr. Morgan's failure to use due care contributed to his injury or not.

By the 11th and 12th requests the court was asked to tell the jury that the accused had the right to assume that Mr. Morgan would use reasonable care to avoid danger, and that the accused was not chargeable with extra care until he saw that Mr. Morgan was putting himself needlessly and negligently in a place of danger, and that if the accused

took such steps as, at the time, seemed to him most expedient to avoid the accident, he should be acquitted.

What the accused, under the circumstances in which he was placed, might reasonably have assumed would be the conduct of the deceased, and what inferences he might have been justified in drawing from the actions of the deceased, were questions for the jury to decide upon all the evidence before them, and not matters of law upon which it was the duty of the court to give instructions. The judge clearly told the jury that in deciding whether the conduct of the accused was criminal in its nature, his conduct should be judged by the situation and circumstances as they appeared to the accused at the time. He could not properly have said to them, as requested, that "if, after Mr. Morgan placed himself in a position of danger, the defendant took such steps as at the time seemed to him most expedient to avoid the accident," he should be acquitted. The State claimed that at and before that time the accused was driving his automobile at an excessive rate of speed. If the unlawful act of the accused in running his automobile recklessly rendered ineffectual his later best efforts to avoid the collision, when he first saw Mr. Morgan in danger, he was not entitled to an acquittal.

The reasons of appeal from 6 to 18 are based upon certain quoted portions of the charge. In several instances practically the same question is presented by several reasons of appeal.

First, the accused complains that the court, at the commencement of its charge, said of the case: "It is a case in which you are called upon to fix a standard of conduct under circumstances like those presented to you, and more particularly a standard of conduct with reference to the carefulness required of drivers of automobiles if they would escape the liability that may come under the law of criminal negligence." The defendant urges that this, and other similar statements in the charge, left the jury at liberty,

"unfettered by any rules of law, to say whether or not the accused acted in a criminal manner or not."

That the jury could not reasonably have so understood this language is sufficiently apparent from the instructions given in other parts of the charge. The test which the court required the jury to apply to the conduct of the accused was that of recklessness or wanton negligence. The court said that "to sustain the charge, the State must clearly bring home to the accused a criminal liability for Doctor Morgan's death, and a criminal liability arising from culpable negligence in Campbell's manner of running and the speed of his motor vehicle." The State must clearly show, the court said, "that Doctor Morgan's death ensued as the direct result of these acts, and if it fails in any of these material elements, its case fails." And again, that the crime charged was involuntary homicide caused by culpable negligence, and that negligent homicide was the causing of the death of another "negligently and carelessly in the performance of a lawful act"; that "to make a lawful act carelessly performed resulting in death a criminal one, the carelessness must have been gross, implying an indifference to consequences"; that the term "gross negligence" meant something stronger than mere negligence, that is, the failure to use the care of an ordinarily prudent man, and implied "a somewhat aggravated kind of negligence," "a wantonness and disregard of the consequences which may ensue, . . . an indifference to the rights of others."

One who wilfully drives an automobile in a public street of this State at a rate of speed or in a manner expressly forbidden by statute, and thereby causes the death of another, or one who, with reckless disregard for the safety of others, so negligently drives an automobile in a public street as to cause the death of another, is guilty of criminal homicide. The jury were told clearly enough by the court that the latter was the crime with which the accused was charged, and were told what the elements of that crime were.

The charge regarding negligence complied with the defendant's request 13, which was, that in determining whether or not the defendant was guilty of manslaughter, the jury "must first determine whether or not the defendant was grossly negligent in the management of his automobile, and was running it without due regard to the rights of Doctor Morgan."

The following language of the charge is one of the errors assigned: "On a public and traveled highway no traveler has a right to assume, at any time or under any conditions, that others are not also abroad, as justification for a line of conduct that would amount to recklessness if he had knowledge that another was approaching. . . :"

We have already suggested that it is generally the province of the jury, rather than of the court, to decide what one in the situation of the defendant, might reasonably have assumed with a view of regulating his own conduct. Statements in text-books and opinions of courts, as to what may reasonably be assumed by individuals in given situations, are generally made with reference to the reasonableness of conclusions of fact which have been or may be reached by a jury or court in deciding questions of negligence, rather than with the view of stating any established rule of law which it may be the duty of the court to state to the jury. *Riley* v. *Consolidated Ry. Co.*, 82 Conn. 105, 108, 72 Atl. 562. If this general statement of the court might be open to criticism if made in some cases, it is clear that under the circumstances of the present case the accused could not reasonably have assumed that there would be no one upon the highway at the time and place of this accident who might be injured if the accused drove his automobile at an excessive speed. The statement complained of could not therefore have been harmful to the accused.

In charging the jury the court read to them § 11 of the Automobile Act of 1907 (Public Acts of 1907, Chap. 221, p. 825), which provides that no person shall operate a

motor vehicle in the public highways recklessly or at a rate of speed greater than is reasonable and proper, or so as to endanger property or the life or limb of any person; and that if the rate of speed exceeds twenty-five miles an hour for the distance of one eighth of a mile, that shall be prima facie evidence that the vehicle is operated at a greater rate of speed than is reasonable; and also read to the jury, from § 12, the provision that "upon approaching any person walking in the traveled portion of any highway, . . . and also in passing such person, . . . the person operating a motor vehicle shall have the same under control and shall reduce its speed." The court then said to the jury: "Now, that means that from the time the person operating sees, or, in the exercise of ordinary care, should have seen, a person walking in the highway, he shall so reduce his speed, if reduction is necessary, and so bring his motor under control, so far as practicable, within the time after he observes a person in the highway, that he may, by exercising control, avoid injury to the pedestrian. The statute in question provides a penalty for a violation of either of these two sections referred to, but with that we have no concern. This action is not based upon a violation of the statute, and it was not necessary for the State to . . . found its action upon it at all. But I think that the language I have read from section 12 [repeating the language of that section as above quoted] may be taken as a legislative announcement of what, in its judgment, . . . is reasonable, and properly to be required of the driver of an automobile, so far as speed and control are concerned, when he sees a person in the traveled portion of the highway." The reading of § 12, and these remarks of the court regarding it, are assigned as errors.

The defendant cannot complain of the action of the court in reading these sections as having a possible bearing upon this case. The defendant in his 8th request asked the court to state to the jury the provisions of § 11 as applicable to

the question of what was an unlawful and dangerous rate of speed. Section 12 was equally applicable to that question, in case the jury should find that the accused was passing the deceased when the latter was walking in the traveled portion of the highway.

But it is said that the remarks of the court above quoted were, in effect, that the jury should find the accused guilty of manslaughter if they found he did not reduce the speed of his automobile when he passed, or attempted to pass, the deceased. Such a meaning cannot fairly be given to the court's language. The court clearly told the jury that the fact that the accused drove his automobile, if the jury found he did, at a greater rate of speed than prescribed by this statute, or that he failed to apply the brakes, did not necessarily establish the degree of negligence required to convict. The jury were instructed that gross negligence must be proved, and that the death of the accused was the direct result of the negligent act; and that upon the question of negligence the inquiry for the jury was, "do all the circumstances establish beyond a reasonable doubt a degree of carelessness amounting in itself to a culpable disregard of the rights and safety of others." Under the instructions given the jury must, from the verdict rendered, have reached the conclusion that the death of Mr. Morgan was the direct result of the gross carelessness of the defendant.

Whether that verdict was justified by the evidence, is a question which is not before us for decision.

Upon the trial the accused as a witness was asked by his counsel these questions: "Did you use your best judgment to avoid coming in contact with Doctor Morgan?" "Was there anything that you could have done under the conditions that you were there, as you just detailed them, that would have avoided this accident?" "Was what you did under those conditions the only thing you could with safety do?" From the language of the court in excluding these questions it is apparent that the witness had testified fully

as to all the material circumstances connected with the accident, including what he did, and what he did not do, and what the result would have been had he done differently. The trial court correctly held that that was the limit to which he could testify on direct examination. The manifest purpose of these questions was to enable the accused to say in effect that he did his best to avoid the collision. Such an answer would have been but an expression of the witness' opinion, upon a question which it was the province of the jury to determine.

Other rulings complained of, upon questions of evidence, were clearly correct; we deem it unnecessary to discuss them or to detail them here.

There is no error.

In this opinion the other judges concurred.