ALEX SCHULTZ V. STATE OF NEBRASKA.

FILED APRIL 8, 1911. No. 16,995.

1. Homicide: OPERATION OF AUTOMOBILE: MANSLAUGHTER: INFORMATION. Substance of the information stated in the opinion, and *held* sufficient to charge the defendant with the crime of manslaughter by carelessly, recklessly, unlawfully and wilfully driv· ing his automobile on the public streets and highways of the city of Omaha, thereby causing the death of another.

2. ———: ———: ———. One who drives an automobile wilfully, recklessly, carelessly and negligently, and at a rate of speed for· bidden by the statute, upon the public streets or highways of this state, and thereby causes the death of another, is guilty of criminal homicide.

3. ———: INSTRUCTIONS: AUTOMOBILES: UNLAWFUL SPEED. On the trial of a person charged with such crime, it is permissible for the court to define an unlawful rate of speed in the language of the statute regulating the use of motor vehicles upon the public streets and highways of this state.

4. Constitutional Law: POWERS OF JUDICIARY AND LEGISLATURE. Ordinarily the courts will not substitute their opinions for the judgment of the legislature as to the reasonableness of an act fixing the rate of speed at which motor vehicles may be law· fully driven.

5. **Criminal Law: INSTRUCTIONS.** Where the substance of an instruction requested by the defendant has been given by the court upon his own motion, he is not required to repeat it because of such request.

6. ———: ———. Where there is no evidence upon which to predicate a requested instruction, it is proper for the court to refuse to give it.

7. **Homicide: OPERATION OF AUTOMOBILE: NEGLIGENCE.** Where a person wilfully, recklessly, carelessly and negligently, and at an unlawful rate of speed, as defined by the statute, drives his automobile upon the public streets and highways of this state and thereby kills another, negligence of the driver of another car in which the deceased was riding when he was killed cannot be invoked, under ordinary circumstances, to relieve such person of criminal liability.

ERROR to the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*W. W. Slabaugh, J. W. Battin* and *S. F. Neble, for* plaintiff in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton, contra.*

BARNES, J.

Alex Schultz, hereafter called the defendant, was prosecuted in the district court for Douglas county on a charge of manslaughter. His trial resulted in a conviction, and he was sentenced to serve a term of three years in the state penitentiary. From that judgment he has brought the case here by a petition in error.

1. Defendant's first contention is that the information on which he was tried does not charge a crime, in that it fails to state that defendant committed an assault. The charging part of the information reads as follows: "That on the 21st day of June in the year of our Lord nineteen hundred and ten, Alex Schultz, late of the county of Douglas aforesaid, in the county of Douglas and state of Nebraska aforesaid, then and there being in said county, and then

and there being upon a public highway, to wit: at the intersection or crossing of Thirty-fourth and Leavenworth streets in the city of Omaha, which said streets are public highways, and the said Thirty-fourth street at the point aforesaid being a part of the boulevard system of said city, and the said intersection or crossing being a place at which there is much traffic, did then and there negligently, carelessly, recklessly, unlawfully and feloniously drive, propel and operate a motor vehicle, commonly called an automobile, upon said public streets and highways and at said crossing or intersection aforesaid, at a rate of speed greater than was reasonable and proper, having regard to the traffic and use of said streets and highways at the place aforesaid, and having regard to the safety of the public, and did then and there so drive, propel and operate said automobile at a rate of speed so as to endanger the life and limb of persons using and traveling said streets and highways at the point aforesaid, and at a rate of speed in excess of the rate permitted by law, and then and there, while so negligently, carelessly, and unlawfully propelling, driving and operating said automobile, did in and upon one William Krug make an assault, and the said automobile which he, the said Alex Schultz, was then and there upon said streets and public highways, and at said intersection and crossing, so negligently, carelessly and unlawfully propelling, driving, and operating, in and against the said William Krug unlawfully and maliciously did force and drive, and him, the said William Krug, did then and there throw to and upon the ground, curbstone and pavement, and did then and there and thereby give to the said William Krug, in and upon the upper part of the body and head of him, the said William Krug, certain contusions, fractures and mortal wounds, of which the said William Krug on said 21st day of June, 1910, in said county and state did die; and so the said Alex Schultz, him, the said William Krug, in the manner aforesaid, and unintentionally while in the commission of said unlawful act, did then and there unlaw-

fully and feloniously kill and slay; contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Nebraska."

It thus appears that the information not only charges an assault, but contains every element necessary to constitute the crime of manslaughter. The record also discloses that the defendant fully understood the nature of the charge against him, and conducted his defense in such a manner as to have exonerated himself from criminal liability had the jury believed his evidence. A like question was before the supreme court of Missouri in *State v. Watson,* 216 Mo. 420, upon a similar information, in which the defendant was charged with killing a pedestrian while carelessly, recklessly and negligently running his automobile over and upon a certain street in the city of St. Louis. Speaking of the information in that case, the court said: "This, in our opinion, is a sufficient charge and fully informed the defendant of the nature and character of the offense he was called upon to answer. It was not, in our judgment, essential that the information should undertake to set out in detail in what such carelessness, recklessness and culpable negligence consisted, but the charge that he operated and propelled this automobile along a public street carelessly, recklessly and with culpable negligence was in effect notifying the defendant that he was not using, operating or propelling his automobile in accordance with the law or the ordinances of the city regulating the use and operation of such machines." From the foregoing we are of opinion that the information in this case was sufficient in all respects to charge the defendant with the offense of which he was convicted.

2. Defendant's second and third assignments of error will be considered together. They each, in a different form, raise the question of the rate of speed at which automobiles may be operated upon the public streets and highways of this state. By section 147, ch. 78, Comp. St. 1909, it is provided: "No person shall operate a motor vehicle on a public highway at a rate of speed greater than is reason-

able and proper, having regard to the traffic and use of the highway, or so as to endanger the life or limb of any person, or in any event in the close built-up portions of a city, town or village, at a greater rate than one (1) mile in six (6) minutes, or elsewhere in a city, town or village, at a greater rate than one (1) mile in four (4) minutes, or elsewhere outside of the city, town or village, at a greater rate than twenty miles per hour; * * * and in no event greater than is reasonable and proper, having regard to the traffic then on such highways and the safety of the public." The trial court by paragraph 5 of his instructions charged the jury in substance that, in order to convict the defendant, they must find from the evidence beyond a reasonable doubt that William Krug was alive June 21, 1910; that on the same day he was killed, and his death was the result of an unlawful act on the part of Alex Schultz; that such killing occurred on the streets of Omaha; that it was the result of a collision between the automobile driven by Schultz at an unlawful rate of speed and the automobile in which Krug at that time was riding. In defining an unlawful rate of speed, the court's instruction, No. 6, stated the substance of the section of the statute above quoted. The giving of those instructions is jointly assigned as error, and it is argued that the conviction cannot be maintained solely because of a violation of the speed limit fixed by law. It will be observed that this case is not prosecuted solely for a violation of the speed limit fixed by the statute, but is based in fact on the negligent, reckless, careless and dangerous driving of his automobile by the defendant. In a recent case in Connecticut the defendant was found guilty of manslaughter in negligently and recklessly driving his automobile over a man named Morgan. In that case the court took occasion to read to the jury the automobile act of that state, which is quite similar to the statutes of Nebraska, regulating the use of automobiles on public streets and highways. It was claimed that it was error to read those statutes and apply them in that case, but the supreme court of Connecti-

cut found no error in the instruction. It was there said: "One who wilfully drives an automobile in a public street of this state at a rate of speed or in a manner expressly forbidden by statute, and thereby causes the death of another, or one who, with reckless disregard for the safety of others, so negligently drives an automobile in a public street as to cause the death of another is guilty of criminal homicide." *State v. Campbell,* 82 Conn. 671.

It will be observed that by instruction 5 the court told the jury that to find the defendant guilty they must find from the evidence beyond a reasonable doubt that he operated his machine at an unlawful rate of speed. This is explained in instruction No. 6 as a speed greater than is reasonable and proper, having regard to the traffic and the use of the highway, or so as to injure the life or limb of any person, as defined by the words of the statute, and it was thereupon properly left to the jury to determine whether or not the defendant was driving his automobile at an unlawful rate of speed when the collision occurred. We find no error in the instructions complained of.

It is argued that the act regulating the speed of motor vehicles is unconstitutional and void. because it is unreasonable. No authorities are cited in support of this argument, and we doubt if any authority can be found to sustain it. The act seems to be a proper exercise of the police power of the state. The legislature no doubt was aware of this new method of public travel, and, recognizing the fact that the automobile furnishes a means of transportation by which a speed may be attained greater than by any other vehicle in common use, deemed it necessary to regulate its use in such manner as to prevent collisions and accidents like the one in the case at bar, and, having due regard to the safety of life and limb of all persons rightfully upon our public streets and highways, passed the act in question defining the methods of operation and the rate of speed which would in their judgment best subserve the public interest. In such case the courts should not under ordinary circumstances substitute their

opinions for the judgment of the legislative branch of the government as to the reasonableness of such regulation.

3. Error is assigned because of the refusal of the trial court to give instructions 17, 24, and 26, requested by the defendant. By No. 17 the court was asked to instruct the jury that, if they had any reasonable doubt that the death of William Krug was the natural and probable result of the collision, they should find the defendant not guilty. It appears that the substance of that instruction was given by the court on his own motion, and it was unnecessary to repeat it at the request of the defendant.

By instruction No. 24 the court was asked to charge the jury that, if they had any reasonable doubt as to whether or not William Krug was thrown from the gray car because of the plunge forward by the gray car, and that as a result of being thrown from said car he was killed, and that such plunge forward was made by the driver of the gray car, then they should find the defendant not guilty. That instruction was properly refused because there was no evidence upon which to predicate such a defense, as we shall presently see. Instruction 26 was in substance a repetition of instruction 24, and was therefore properly refused.

4. Error is assigned for giving instruction No. 7 by the court on his own motion, and the refusal to give instruction No. 25 requested by the defendant. By instruction No. 25 the court was requested to instruct the jury on the law of contributory negligence, to wit, negligence on the part of the driver of the car in which Krug was riding. In support of this contention defendant cites *State v. Stentz,* 33 Wash. 444. In that case the jury were informed that if they should find from the evidence that the deceased came to his death by the mutual mistake of the deceased and the defendant in the honest endeavor to avoid a collision both on the part of the deceased and the defendant, then in that event such killing would be accidental, and not criminal, and their verdict should be not guilty. But in the same paragraph it was further said: "Gentlemen

of the jury, I instruct you that, if the defendant was at the time alleged in this information engaged in an unlawful act, to wit, the act of driving horses and a wagon upon the public highway in such a manner as to endanger the lives and persons of others, and such unlawful act resulted in the killing of the person named in the information mentioned, it would then be immaterial whether the killing was accidental or intentional. The defendant would be guilty." It will thus be seen that the case cited does not support the defendant's contention. On the other hand, in *State v. Campbell, supra,* the court said: "Contributory negligence, as such, is not available as a defense in a criminal prosecution for a homicide caused by 'the gross and reckless misconduct of the accused; although the decedent's behavior is admissible in evidence, and may have a material bearing upon the question of the defendant's guilt. If, however, the culpable negligence of the accused is found to be the cause of the decedent's death, the former is responsible under the criminal law, whether the decedent's failure to use due care contributed to his injury or not." The rule of law concerning contributory negligence by the injured person, as a defense in civil actions for damages for personal injuries had no application to this case. The state was required to prove the alleged unlawful act of the accused and its consequences, but not that the deceased exercised due care to avoid the consequences of the unlawful act. The authorities are not in conflict as to this question. Uniformly the courts have said a man will not be excused for killing another, even though his victim was negligent. While contributory negligence is a complete defense to an action for private injury resulting from homicide, it is no defense to a prosecution for a public wrong. 21 Am. & Eng. Ency. Law (2d ed.) 195. We think the refusal of this instruction was clearly right for the further reason that the evidence disclosed no theory upon which such an instruction could be predicated.

It is also contended that there is a distinction between

offenses *mala prohibita* and *mala in se.* The distinction, if any, is not accounted of much practical consequence by the text-writers. 21 Am. & Eng. Ency. of Law (2d ed.) 190; 1 Bishop, New Criminal Law, sec. 333. In *State v. Stanton,* 37 Conn. 421, it was said: "Where a man was knowingly engaged in a criminal act, and untentionally committed a greater offense than the one intended, proof of an intent was not essential to a conviction for the latter crime. We perceive no error in this part of the charge. The defendant claims that the proposition of the court, though correct when applied to crimes which are *mala in se,* is not correct when applied to crimes which are *mala prohibita.* We do not recognize the distinction as law. The cases cited by the defendant's counsel are all cases where the prisoner was engaged in doing a lawful act and the offense was committed through carelessness." There seems to be no conflict in the decisions where the defendant is violating some statute, and where his manner is negligent and careless. The courts in such cases uniformly say that he is guilty of manslaughter if the death of some other person is the result. *Ford v. State,* 71 Neb. 246; *Flinn v. State,* 24 Ind. 286; *Bias v. United States,* 3 Ind. Ter. 27, 53 S. W. 471; *Adams v. State,* 65 Ind. 565; *Thompson v. State,* 131 Ala. 18; *Irwin v. Judge,* 81 Conn. 492; *State v. Watson,* 216 Mo. 420.

5. It is contended that the verdict is not supported by sufficient evidence. This question is not discussed in the defendant's brief. We deem it proper, however, to state the facts as they appear from the record. On the morning of June 21, 1910, the deceased and his friend McCormick were riding in an automobile driven by one William H. Wallace. They were going north on what is called Central boulevard, which is one of the principal streets of the city of Omaha. As they approached the intersection of the boulevard with Leavenworth street, which is also one of the principal thoroughfares of that city, they were driving at the rate of from eight to ten miles an hour. The southeast corner of Leavenworth street, where it crosses the

boulevard, is what is called a blind corner. It appears that trees and shrubs were growing on the east side of the boulevard clear up to its intersection with Leavenworth street, so that persons approaching from the east on that street were unable to see vehicles approaching from the south on the boulevard until they reached the intersection. While the car in which the deceased was riding was crossing Leavenworth street, the automobile driven by the defendant approached the intersection from the east at an excessive rate of speed, and struck it with such force as to cause the death of Mr. Krug. The state produced five or six persons, some of whom were within 100 feet of where the collision occurred and saw the entire transaction, who without substantial variance testified that the defendant's car as it approached the intersection and up to the very instant of the collision was running at a speed of between 30 and 50 miles an hour. It appears that Central boulevard at the place where it crosses Leavenworth street is one of the main-traveled streets of the city of Omaha, and is extensively used by persons driving automobiles; that Leavenworth street is also used by them as well as by all other kinds of conveyances. A number of the witnesses who resided within a few hundred feet of that intersection testified that there was no time of the day during business hours that both of those streets were not occupied by automobiles and other vehicles. It appears that, as the defendant's car approached the intersection, he discovered the presence of the automobile in which the deceased was riding; that he saw a collision was imminent, and, in order to avoid it, he turned his automobile to the left so as to pass behind the one in which the deceased was riding. This was the proper course for him to pursue, and accorded in all respects with the rules of the road. It also appears that when the driver of the car in which the deceased was riding, which was proceeding at a rate of speed not exceeding eight to twelve miles an hour, discovered the approach of the defendant's machine, he applied additional power in an attempt to get out of

the way and avoid a collision. This was the proper course for him to pursue, and in all respects accorded with the rules of the road. Notwithstanding all of this, the speed of the defendant's car was so great that, although he discovered the presence of the other car when he was from 150 to 200 feet distant from it, he was unable to avoid the collision, and struck the Wallace automobile at about the right hind wheel with such tremendous force that it was lifted off from the pavement, thrown into the air several feet, and, while it was going north when the collision occurred, when it again struck the pavement it was facing south. It was thrown from 20 to 25 feet in a northwesterly direction, and landed against a telephone pole at the edge of the curb, while the machine in which the defendant was riding, although it had a wheel broken by the impact of the collision, could not be stopped until it ran a distance of 152 feet, jumped over the curb, which was from ten inches to a foot in height, went across the sidewalk, and hung on the edge of a hole in a vacant lot on the left hand side of the street. At least two of the witnesses who were looking directly at the cars when the collision occurred, testified that the deceased, who was a man weighing over 200 pounds, was thrown into the air from 10 to 15 feet, and a distance of from 25 to 30 feet, and struck on his head on the pavement or curbstone, receiving such injuries that he almost instantly died.

It thus appears that the excessive, unlawful, negligent, and reckless rate of speed at which the defendant was driving his car as he approached the intersection of the boulevard and Leavenworth streets was the sole cause of the collision which resulted in the death of William Krug. It was claimed by the defendant that Wallace, who drove the car in which the deceased was riding, was guilty of contributory negligence in applying his extra power, or, in other words, in attempting to speed up, as some of the witnesses designated it, at the time of the collision. There is no merit in this contention, for the evidence is clear that Wallace, recognizing the danger, attempted in a proper

manner to avoid it, and, if he had not applied his extra power in order to move out of the way, the defendant's machine would have struck his automobile about the center, instead of striking it at or about the right hind wheel. At least two of the witnesses for the state who lived in the immediate vicinity of the intersection in question testified that they had observed the passing and running of automobiles upon both the boulevard and Leavenworth streets for many years, and that in all that time they had never seen an automobile running as fast as the one which the defendant was driving at the time the collision occurred. It is true that the defendant and some of those who were riding in the car with him testified that they were driving at a rate of speed not exceeding 12 to 20 miles an hour. But this testimony must give way to the physical facts shown by the result of the collision. It is utterly inconsistent with such results. Each of the machines with its load weighed something like 5,000 pounds, and the speed at which the automobile driven by the defendant was going was so great, and the impact was so powerful, as to lift the automobile in which the deceased was riding bodily into the air and hurl it the distance of from 20 to 25 feet; not only this, but to completely reverse its direction, so that when it landed against the telephone pole it was facing south, while at the time of the collision it was moving and facing north. The testimony of the defendant and those riding with him serves but to illustrate the axiom of the law of evidence that officers and crews of respective vessels or vehicles where collisions have occurred will defend the vessels to which they are attached. It seems to be a curious psychological fact that, when passengers are aboard of a vessel or other means of conveyance, they appear to be controlled by the same bias. 2 Moore, Facts, sec. 1110.

6. Finally, it is contended that the court erred in excluding the evidence offered by the defendant to prove that McCormick, the friend of the deceased, who sat at his left side in the rear seat of the Wallace car, said within

a minute or so after the collision: "I told the damn fool to look out." It is claimed that this was a part of the *res gestæ,* and was therefore admissible as tending to prove that the driver of the car in which Krug was riding was guilty of contributory negligence. What we have heretofore said in regard to that question is a sufficient answer to this assignment.

We are aware of the importance of our decision of this case, both to the defendant and to the public. The questions presented by the record are before us for the first time, and we have examined them with great care. We recognize the necessity, utility and convenience of the automobile as a means of travel, and it is neither our purpose nor our desire to unnecessarily hamper or restrict its reasonable use. On the other hand, we deem it our duty to hold the persons who make use of such machines to that degree of care necessary for the protection of the lives of all persons who are rightfully upon the public highways and streets of our state. The statute regulating the use of such machines was passed solely for that purpose, and amounts to a valid exercise of the police power of the state. This view accords with the great weight of authority. In Berry, Law of Automobiles, sec. 159, it is said: "One may be criminally responsible for the negligent operation of an automobile. A person is guilty of criminal negligence when he does some act or omits some duty under circumstances showing an actual intent to injure, or when the breach of duty is so flagrant as to warrant an implication that the resulting injury was intended; that is, when his negligent conduct is incompatible with a proper regard for human life. Negligence is the gist of the offense, and, in the absence of recklessness or of want of due caution, there is no criminal liability. Actual intent is not an essential element of the offense. It is enough if there is shown a neglect and reckless indifference of the lives and safety of others." The evidence contained in the record conclusively establishes a case of negligent and reckless indifference to the lives and safety of others on the part of

the defendant sufficient to sustain his conviction and jus-
tify the judgment of which he complains.

We find no reversible error, and the judgment of the dis-
trict court is

AFFIRMED.