MAXON, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 17—June 6, 1922.*

*Homicide: Manslaughter: Violation of statute relating to operation of automobiles: Unintentional killing: Common-law murder: Implied malice: Causal connection between act and death: Burden of proof: Negligence of deceased: Certainty of statute.*

1. Under sec. 4346, Stats., the unintentional killing of a human being through a reckless act which from its nature was capable of doing great bodily harm to a human being might sustain a finding of the "implied malice" as made such killing a common-law murder within the meaning of the phrase as used in the statute.

2. If the act from which death resulted was not only *malum in se* but one *malum prohibitum,* the resultant death warrants a finding of the implied malice which would make the causal act murder at common law.

3. In a prosecution for manslaughter the evidence is *held* to support the conclusion that at the time of the collision of defendant's automobile with decedent's motorcycle defendant was violating sec. 1636—49, Stats., by driving his automobile while intoxicated to such an extent that it materially interfered with his guidance of the car and that the collision occurred while defendant was perpetrating a statutory offense less than a felony.

4. To sustain a conviction of manslaughter there must be a causal connection between defendant's act in violation of the statute and the death, and the burden is on the state to show more than the mere fact that there was a coincidence of time and place between the act declared to be a misdemeanor and the fact of death. In this case it is *held* there was a clear connection of cause and effect between the violation of sec. 1636—49 and the death.

5. The fact that deceased may have in a measure by his own carelessness contributed to his death cannot be recognized as a defense.

6. The fact that no precise rate of speed is fixed by sec. 1636—49, Stats., does not raise a valid objection to it as not defining a standard by which persons can regulate their conduct with any degree of certainty that they are at a given time violating or not violating the statute. *Mulkern v. State,* 176 Wis. 490, followed.

ERROR to review a judgment of the municipal court of Milwaukee county: A. H. REID, Acting Judge. *Affirmed.*

The defendant was charged with having caused the death of one Frank Fehlinger on December 22, 1920. A jury trial having been waived, on trial before the court defendant was found guilty of manslaughter in the first degree and thereupon sentenced to five years in the Green Bay Reformatory. To review such judgment he sued out this writ of error.

*A. C. Umbreit* and *Glenway Maxon,* both of Milwaukee, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, Winfred C. Zabel,* district attorney of Milwaukee county, and *George A. Shaughnessy,* assistant district attorney, and oral argument by *Mr. Zabel* and *Mr. Shaughnessy.*

The following opinion was filed April 11, 1922:

ESCHWEILER, J. Prospect avenue, one of the principal thoroughfares of Milwaukee, runs in a nearly north and south direction. At its south end it opens into Juneau avenue, an east-and-west highway; a short block north is Knapp street, also running east and west. Prospect avenue and Juneau avenue are paved with asphalt, and Prospect avenue at the place in question is forty-four feet wide from curb to curb. Shortly before 9 o'clock on the evening in question defendant, with several companions, was in an automobile driven by defendant. They had just left a place in the city where they had taken intoxicating liquors. The night was dark and stormy, snow falling and blowing and covering the pavement with a thin coating. A little north of Knapp street an automobile was parked along the east curb of Prospect avenue. Several automobiles were parked along its west curb at intervals further north. On turning into Prospect avenue from Juneau avenue there

was an automobile ahead of defendant's car proceeding in
the same direction.    Just as the car then ahead was passing
the parked car on the east side of Prospect avenue, the de-
fendant drove his car further to the west in order to get
ahead and in so doing alongside and close to the west side
of the other car.    At the same time the deceased, Frank
Fehlinger, was riding in a southerly direction on Prospect
avenue on a motorcycle with a side-car attachment in which
were seated two young boys.    When defendant's car was
just passing the other one there was a collision with the
motorcycle, as a result of which Fehlinger was knocked
from the motorcycle, his head striking the spotlight on de-
fendant's car, and one of his knees striking defendant's left
front fender so that a bone pierced the fender and re-
mained there imbedded.    His body slid along the pavement
to the west and stopped with the head just about touching
the west curb and his arms resting on the same with his feet
toward the east. Mr. Fehlinger died early the next morn-
ing as a result of the injuries there received.    The motor-
cycle remained upright, stopping at the west curb with the
engine still running.    The left foot-rest and clutch of the
motorcycle were torn off and no other substantial injuries
done to it.    On defendant's car the left front tire was
punctured, the spotlight and the two left wheel hub caps
knocked off, and the left side of the top broken or sagged
down.    Defendant did not then stop but proceeded north-
erly, his lights being then extinguished; running into or
almost into the west curb and then swinging to the east
again, and thereafter proceeded to his destination on Far-
well avenue several blocks to the north.    ·

The court in rendering his judgment stated or found in
substance:

That at the time of the collision the defendant was driv-
ing his automobile while intoxicated to such an extent that
it materially interfered with his guidance of the car and his

discretion in running the same and to the degree that is mentioned and defined in the statute hereinafter cited in relation to driving motor vehicles;

That the car was being driven at the time at a speed of at least twenty-five miles an hour;

That considering all the circumstances he was guilty of reckless conduct that might very greatly endanger other travelers upon the highway at that time;

That, irrespective of the statutes regulating the operation of automobiles, the act of the defendant under the circumstances in driving such a vehicle at such a speed with other travelers upon the highway, resulting as it did and threatening as it did, was one clearly within the field of common-law homicide; and that although the defendant should be acquitted of any intentional killing or any intentional or express malice, the circumstances were such as to impute to him implied malice.

Thereupon the court found and determined that the defendant was guilty of manslaughter in the first degree under the provisions of sec. 4346, Stats., which reads:

"The killing of a human being, without a design to effect death, by the act, procurement or culpable negligence of any other, while such other is engaged in the perpetration of any crime or misdemeanor not amounting to a felony, or in an attempt to perpetrate any such crime or misdemeanor, in cases where such killing would be murder at the common law, shall be deemed manslaughter in the first degree."

Defendant contends upon this review that the evidence does not warrant a conviction under the statute just quoted.

It having been conceded in this case that this was an involuntary, that is unintentional, killing of Mr. Fehlinger, it was necessary, in order to support a conviction for manslaughter in the first degree under this statute, that the state should prove by evidence that satisfied beyond a reasonable doubt that there were present the following elements:

First, that death resulted from negligence by defendant;

Second, that it occurred while defendant was engaged in the commission of an offense less than felony;

Third, that defendant's act would be sufficient to create the common-law offense of murder;

Fourth, that there was causal connection between the particular prohibited act and the death.

We shall first discuss the third of the above stated elements, because it is so strongly urged upon us on defendant's behalf that such element is, under the evidence here, lacking.

That the circumstances must be such as to present the element of common-law murder and that such element is a constituent part of the whole of the above quoted statute has already been held by this court. *Rowan v. State,* 30 Wis. 129, 137; *Boyle v. State,* 57 Wis. 472, 484, 15 N. W. 827.

In *Dillon v. State,* 137 Wis. 655, 660, 119 N. W. 352, there were discussed certain suggested requirements of this statute and no mention made of this particular part of the statute, namely, the element of common-law murder. This feature now being discussed, however, was not necessary for consideration under the facts in that case, the two cases first above cited were not quoted or discussed, and the omission of mention of such element in the *Dillon Case* in nowise changed or affected the rule of the above cases.

Just what class or kind of negligent acts resulting in the killing of a human being were deemed sufficient to supply the requisite of implied malice to make homicide murder at common law is quite difficult of ascertainment. In tracing back through the text-books and the English Reports great difficulties are met to find reported cases in the common law in which a clearly defined statement of the rule is made. But be that as it may, now, and evidently at the time of the adoption of this statute, the generally accepted doctrine is and was that an unintentional killing of a human being through the reckless and wanton doing of an act,

which from its nature was capable of doing great bodily harm to a human being, might be deemed sufficient to sustain a finding of the implied malice as made such killing a common-law murder within the meaning of the phrase as used in our statute above quoted.

Such has been the declared doctrine even when the act resulting in the death was merely wrong in itself though not expressly forbidden by any statute. *Comm. v. Hawkins,* 157 Mass. 551, 32 N. E. 862; *Comm. v. Parsons,* 195 Mass. 560, 569, 81 N. E. 291.    See, also, 3 L. R. A. 644, where a list of cases is given; also 61 L. R. A. 277; 63 L. R. A. 379.

But where, as here, the act from which the death resulted was not only one *malum in se* but in addition one *malum prohibitum,* the resultant death is clearly sufficient to warrant a finding of the implied malice which would make the causal act murder at common law.

In *Pliemling v. State,* 46 Wis. 516, 520, 1 N. W. 278, the doctrine that an accidental death resulting from the perpetration of a criminal misdemeanor, where the element of danger concurs with the unlawfulness of the act, might constitute murder at common law, was recognized although the point was not precisely involved in that case.

The precise point, however, has been squarely held in cases of accidental death resulting from the reckless driving of automobiles, in such cases as *State v. Campbell,* 82 Conn. 671, 74 Atl. 927, 135 Am. St. Rep. 293, 18 Am. & Eng. Ann. Cas. 236; *State v. Goetz,* 83 Conn. 437, 76 Atl. 1000; *State v. Schaeffer,* 96 Ohio St. 215, 224, 117 N. E. 220, L. R. A. 1918B, 945; *Lauterbach v. State,* 132 Tenn. 603, 179 S. W. 130; *State v. Dugan,* 84 N. J. Law, 603, 89 Atl. 691.    See, also, on the general doctrine, 1 Russell, Crimes (7th ed.) p. 757; 1 Wharton, Crim. Law (11th ed.) § 478; 1 Bishop, Crim. Law (8th ed.) § 314; 1 Hawkins, Pl. Cr. (8th ed.) ch. 13, sec. 68; Coke's Third Inst. p. 57.

Maxon v. State, 177 Wis. 379.

As to the second of the above stated elements, it is clear that the act in question was done while defendant was perpetrating a statutory offense less than a felony. Sec. 1636—49, Stats., prohibits, among other things, the driving of an automobile by an intoxicated person; the driving one recklessly or at a greater rate of speed than is reasonable and proper. Both are punishable under sec. 1636—54, Stats., the driving while intoxicated by a fine of not more than $100 or imprisonment for not more than six months, or both, and the other violation by a fine of not less than $10 nor more than $100. The evidence fully supports the conclusions arrived at by the trial court in those particulars.

The fourth element, namely, a causal connection between defendant's act so in violation of the statute and the death, was found to exist here by the court, and the evidence clearly warranted such conclusion. This element requires that the state has the burden of showing more than the mere fact that there is coincidence of time and place between the act declared to be a misdemeanor and relied upon to sustain the given charge of manslaughter and the fact of death. Under the facts here there was a clear connection of cause and effect between the specific violations by defendant of sec. 1636—49, *supra,* and the death. That there must be such causal connection in order to sustain a conviction is held in *Pliemling v. State,* 46 Wis. 516, 521, 1 N. W. 278; *Jackson v. State,* 101 Ohio St. 152, 155, 127 N. E. 870; *State v. Schaeffer,* 96 Ohio St. 215, 242, 117 N. E. 220; *State v. Dugan,* 84 N. J. Law, 603, 89 Atl. 691; note in 63 L. R. A. 368; *People v. Townsend,* 214 Mich. 267, 183 N. W. 177.

The distinction is manifest between such violations as here presented of a misdemeanor statute with their possible and evident relationship of cause and effect to the killing and the mere coincidence of time in the killing and the violation of some other statute, such, for instance, as punish the driving of an unlicensed or unregistered motor vehicle

under sec. 1636—47, Stats., violations of which are also punished under sec. 1636—54, Stats., *supra.* Such distinction is illustrated by the case cited and relied upon by defendant (*Comm. v. Adams,* 114 Mass. 323), where the mere violation of an ordinance fixing a maximum rate of speed of six miles an hour on the city streets would not be sufficient to supply the criminal intent necessary for a conviction for assault and battery for the running over of a boy while defendant was so driving.

It is further illustrated in the case of *State v. Horton,* 139 N. C. 588, 51 S. E. 945, 1 L. R. A. N. s. 991 (with note), where the mere violation of the statute prohibiting the hunting on another's property without a permit would not supply the element of implied malice necessary to sustain a conviction for manslaughter for an accidental shooting while so hunting.

It is further urged on defendant's behalf that the evidence in this case warrants or requires a determination to the effect that the deceased was himself guilty of negligence in his management of the motorcycle to such an extent that it should be held to have proximately contributed to the collision, and that such contributing negligence by him may be successfully interposed as a bar to this prosecution, as much so as it might or could be in a civil action against him for the resultant damages.

In a criminal prosecution such as this by the state, in which a defendant is charged with the taking of a human life, the fact that deceased may have in a measure, by his own carelessness, contributed to the unfortunate result cannot be recognized as a defense. The reason is plain, owing to the substantial difference between a criminal action prosecuted on behalf of the state and a civil action instituted to recover the damages resulting from the same accident. While no doubt the entire circumstances surrounding the killing are proper for the consideration of the jury in determining whether or not the defendant was negligent, yet his

criminal negligence, if it exists, cannot be wiped out by the fact that the deceased was also negligent. The wide distinction between the criminal prosecution and the civil action for compensation for the resultant death under Lord Campbell's Act was pointed out in *Reg. v. Longbottom,* in 1849, in 3 Cox, C. C. 439; again in *Reg. v. Kew,* in 12 Cox, C. C. 355.

Although the question has not been decided in this state upon this precise statute, yet we are satisfied that such is the proper view to take. It has been so held in other jurisdictions. *State v. Campbell,* 82 Conn. 671, 74 Atl. 927; *State v. Schaeffer,* 96 Ohio St. 215, 117 N. E. 220; *Lauterbach v. State,* 132 Tenn. 603, 179 S. W. 130, in which case a little child ran suddenly from the sidewalk into the pathway of the recklessly driven automobile; *State v. Hanahan,* 111 S. C. 58, 96 S. E. 667; 1 Wharton, Crim. Law (11th ed.) § 207.

That no precise rate of speed is fixed in the statute regulating the management of automobiles (sec. 1636—49, *supra*), in the provision thereof as to reckless driving, and for that reason subject to the possible criticism of there being no definite standard fixed by which a person can regulate his conduct with any degree of certainty that he is at the given time violating or not violating such a statute, cannot be recognized as a valid objection. A fixed and definite rate of speed under one set of circumstances might clearly be not careless or reckless, and under another set clearly so. It is inherent in the nature of the subject matter of the legislation and cannot be avoided or defeat the application of such statute. The same question was but recently fully discussed and determined by this court. *Mulkern v. State,* 176 Wis. 490, 187 N. W. 190. See, also, *State v. Schaeffer,* 96 Ohio St. 215, 229, 117 N. E. 220; *Schultz v. State,* 89 Neb. 34, 130 N. W. 972, 33 L. R. A. N. s. 403, Ann. Cas. 1912C, 495.

Being therefore convinced that the evidence fully war-

ranted the result reached in the trial below and that such result was reached to the trial court's satisfaction beyond a reasonable doubt, the judgment of conviction must be affirmed.    This result makes it unnecessary to consider or discuss other questions presented on the appeal.

*By the Court.*—Judgment affirmed.

The plaintiff in error moved for a rehearing.

In support of the motion there was a brief by *A. C. Umbreit* and *Glenway Maxon,* attorneys for plaintiff in error, and *C. H. Van Alstine,* of counsel, all of Milwaukee.

The motion was denied, without costs, on June 6, 1922.