STATE OF CONNECTICUT *v.* HENRY H. A. FROWEIN

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 16-9512

Argued April 27—decided September 9, 1964

*John L. Calvocoressi,* of Hartford, for the appellant (defendant).

*Marvin W. Platt,* assistant prosecuting attorney, for the appellee (state).

DEARINGTON, J. The state did not file a brief. Practice Book § 1015. The defendant, following his conviction, appealed, assigning error in the court's conclusion that the defendant, upon all the evidence, was guilty of the crime charged beyond a reasonable doubt. No finding was requested. Pursuant to the defendant's assignment of error we turn to the evidence. Aside from the defendant's speed, the facts are not in serious dispute.

The defendant was operating his motor vehicle in a westerly direction on Asylum Avenue near its intersection with Cumberland Road, in West Hartford, at approximately 5:55 p.m. on November 7, 1963. The surface of the road was damp, and it was

drizzling and dark. There was some eastbound traffic. In this area Asylum Avenue is forty feet wide with two marked westbound lanes. The defendant was in his passing lane, having just passed a car operated by Richard St. Jean, a witness for the state. On the south side of Asylum Avenue there were intersecting streets, including Cumberland Road, which extended in a southerly direction. On the north side of Asylum Avenue there was an open field, which was a part of the campus of St. Joseph's College, and there were no intersecting streets. As the defendant arrived in the vicinity of the Cumberland Road intersection, he observed a boy on a bicycle some sixty feet ahead of him. The boy was headed in a westerly direction, at an angle to the course of the highway and in the lane adjacent to the curb. At this time the boy pulled his bicycle to the left, and the defendant, observing this, blew his horn, applied his brakes and abruptly turned to his left. However, a collision resulted and the defendant's vehicle turned completely around before coming to rest on the south side of Asylum Avenue. The right side of the front fender of the defendant's vehicle came in contact with the left side of the bicycle. The point of impact was eleven feet eight inches south of the north curb of Asylum Avenue. The bicycle was black in color and had no headlight but did have a small reflector, together with a strip of reflector tape, attached to its rear fender. There were two overhead street lights in the area, one some forty-seven feet westerly, and the other some eighty feet easterly, of the point of impact. As a result of the accident, the boy was taken to a hospital. He was later interviewed by a police officer but could give no information as to the cause of the accident.

There was conflicting evidence on the part of the state as to the posted speed limit in this area. One

witness testified that the posted limit was thirty-five miles per hour, and the other witness testified that the posted limit was thirty miles per hour. The state produced two witnesses, St. Jean and a police officer who had arrived at the scene sometime later. The defendant was the only witness for the defense. The only direct evidence introduced by the state as to the defendant's speed was that of St. Jean, who testified, in reference to the defendant's vehicle: "I feel that this car went by me at a speed of approximately fifty miles an hour." He further testified that at this time the defendant's car was some distance from the place of the accident, and he estimated the distance as follows: "I would say about two football-field lengths. It was quite a distance." The court takes judicial notice that a regulation football field is 300 feet in length, since such length is common knowledge. *Muse* v. *Page,* 125 Conn. 219, 225. The defendant testified that he did not know his exact speed but estimated it at thirty to thirty-five miles per hour, although, he stated, it was probably greater at the time he passed St. Jean.

The trial court concluded that the defendant was guilty of a violation of § 14-222 of the General Statutes. There are two sentences contained in subsection (a) of this statute, and each clearly states a separate interdict. The first sentence prohibits the operating of a motor vehicle upon a public highway of the state recklessly, having regard to the width, traffic and use of the highway, the intersection of streets and the weather conditions. The second sentence provides: "The operation of a motor vehicle upon any such highway at such a rate of speed as to endanger the life of any person other than an occupant of such motor vehicle . . . shall constitute a violation of the provisions of this section." Since the complaint alleged "[v]iolation of Section 14-222 Reckless Driving," it follows that the state was not

limited to claiming a violation of one of said interdicts to the exclusion of the other.

Under the prohibition of the first sentence, the state is required to show reckless or wanton misconduct. In *Brock* v. *Waldron,* 127 Conn. 79, 84, in which the plaintiff alleged reckless, careless and negligent operation of the defendant's automobile, the court, after summarizing the law on the subject of reckless or wanton misconduct, quoted as follows from *Vanderkruik* v. *Mitchell,* 118 Conn. 625, 631: " 'In short, the evidence discloses that the primary cause of the collision was the thoughtless and careless maintenance of high speed at a point where due care required that it be reduced, but as held, in effect, in . . . [*Ascher* v. *H. E. Friedman, Inc.,* 110 Conn. 1] speed alone does not spell a reckless operation of the car within the meaning of the statute.' One is guilty of reckless misconduct when 'knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.' Restatement, 2 Torts, § 500." There is no finding of a persistent course of conduct, nor of conduct persisted in after a warning of danger. There is nothing to indicate that there was any more of a likelihood that pedestrians would cross at the Cumberland Road intersection than is present at any street intersection. The questions of lookout, control and warning are in the same category. In *Mooney* v. *Wabrek,* 129 Conn. 302, 308, in which the plaintiff alleged recklessness and negligence, the court said: "Recklessness is a state of consciousness with reference to the consequences of one's acts . . . . It 'requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts

which would disclose this danger to any reasonable man,' and the actor 'must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent.' " See *Vanderkruik* v. *Mitchell,* supra; *State* v. *Camera,* 132 Conn. 247, 250. The estimate of speed, together with the weather conditions and the defendant's alleged inattention, was claimed by the state to characterize recklessness. Applying the law to such evidence, we conclude that the court could not find beyond a reasonable doubt that the defendant's conduct evinced a reckless disregard of the rights of others under the first sentence of the statute.

The second sentence also sets forth conduct which constitutes a violation of the statute; it contains two essential elements: (1) operation of a motor vehicle (2) at such a rate of speed as to endanger the life of any person other than an occupant of the vehicle. Under this provision, driving recklessly might be established by facts which would prove that life was endangered, without showing, as is necessary under the first sentence, that the operator was acting without regard to consequences. *State* v. *Andrews,* 108 Conn. 209, 214; *State* v. *Kulbarsh,* 124 Conn. 265, 270; 7 Am. Jur. 2d 822, Automobiles and Highway Traffic, § 273; note, 86 A.L.R. 1273. In the present case, a violation could be found if the speed at which the defendant operated his vehicle created a reasonable probability of danger to the life of any person other than an occupant of his vehicle and if the defendant was by reason of such speed, in whole or in part, the cause of that danger. *Commonwealth* v. *Mara,* 257 Mass. 198, 210; *Commonwealth* v. *Vartanian,* 251 Mass. 355, 358. The operation of a motor vehicle in violation of this provision alone constitutes the offense, regardless of the intent with which

the act was done. The only fact to be determined is whether the defendant did the prohibited act. The facts attending the accident were pertinent considerations in determining whether there had been a violation. Even if we assume that the boy was negligent, and we do not decide that question, that would not excuse the defendant if his conduct came within the intendment of the provision in question, for the issue is whether the defendant committed the act prohibited. *State* v. *Campbell,* 82 Conn. 671, 675; *Commonwealth* v. *Pentz,* 247 Mass. 500, 509.

It is conceded that the defendant was the operator of the motor vehicle; thus the remaining question is whether the speed at which he operated was such as would endanger the life of any person other than an occupant of the defendant's vehicle. The state, in its argument, has placed great stress on the defendant's speed at the time of the accident. Although the speed at that time was relevant, the state, in the sequence of events, was not limited to establishing the speed at any given point. Since the issue concerned a motor vehicle in motion, a violation of the statute could be claimed, within the limitations of the evidence, at any point on Asylum Avenue. There was no direct evidence of the defendant's speed in the area of the accident. For proof of the defendant's speed, the state relied on the testimony of St. Jean, who estimated the defendant's speed at the point where the defendant passed him, some 600 feet distant from the place of the accident. See *Clement* v. *DelVecchio,* 140 Conn. 274, 277. Speed alone is not a violation of § 14-222 but only becomes so when it endangers the life of any person other than an occupant of the vehicle. The presumption of innocence protects an accused until and unless the state has produced enough evidence to justify the trier in finding guilt beyond a reasonable doubt. *State* v. *McDonough,* 129 Conn. 483, 487.

The question is whether the court was warranted, upon all the evidence, in concluding that the defendant was guilty of violating the prohibition here considered. The evidence does not exclude every reasonable supposition of the innocence of the defendant. All that the evidence shows, relative to the defendant's operational conduct, is an estimate of a speed of fifty miles per hour at a given point, and an accident some 600 feet beyond that point. Such evidence was insufficient to warrant a conclusion of guilt beyond a reasonable doubt under the second sentence of the statute.

There is error, the judgment is set aside and the case is remanded with direction to render judgment that the defendant is not guilty and ordering that he be discharged.

In this opinion JACOBS and KINMONTH, Js., concurred.