CASE 23—INDICTMENT—APRIL 4.

# Louisville & Nashville Railroad Co. v. Commonwealth.

APPEAL FROM MARION CIRCUIT COURT.

1. EXTORTION—PENAL STATUTE VOID FOR UNCERTAINTY.—Section 816 of the Kentucky Statutes, which provides that "if any railroad corporation shall charge, collect or receive more than a just and reasonable rate of toll or compensation for the transportation of passengers or freight in this State, or the use of any railroad car upon its tracks or upon any track it has control of, or has the right to use in this State, it shall be guilty of extortion," and the subsequent section fixing a penalty therefor, are void for uncertainty, because they fail to prescribe or fix what is a "just and reasonable rate" by which the railroad could be governed in its conduct.

Louisville & Nashville Railroad Co. v. Commonwealth.

WM. LINDSAY, J. W. ALCORN, E. W. HINES, LISLE & McCHORD, WALKER D. HINES AND H. W. BRUCE FOR APPELLANT.

1. Section 816 of the Kentucky Statutes is void for uncertainty, because it prescribes no standard as to what is just and reasonable for the railroad corporation, and is in effect an *ex post facto law*, contrary to section 19 of the State Constitution, and section 10, article 1 of the Federal Constitution. (Andrew Jackson, *ex parte*, 45 Ark., 164; L. & N. R. Co. v. Railroad Commission of Tennessee, 19 Fed. Rep., 679; Chicago, &c., R. Co. v. Dey, 35 Fed. Rep., 866, 876; Railroad Co. v. People, 77 Ill., 443; Tozer v. United States, 52 Fed. Rep., 917.)

2. The statute is void because it imposes upon railroad corporations a penalty for extortion, which is not imposed upon natural persons operating railroads, or upon other common carriers. (Schoolcraft's Adm'r v. L. & N. R. Co., 92 Ky., 233; L. & N. R. Co. v. Railroad Commission of Tennessee, 19 Fed. Rep., 679; Sam King v. Crowley, 113 U. S., 709.)

3. Even if the statute were good the indictment in this case is bad, because it merely states the conclusion of the pleader that the rate charged was more than a just and reasonable compensation. (State v. Coggeswell, 3 Blackf., 54; State v. Maires, 33 N. J. L., 142.)

4. In a matter of this sort where no standard of what is lawful is furnished corrupt intent on the part of the accused should be alleged and proved. (Commonwealth v. Stout, &c., 7 B. M., 248.)

5. The court erred in permitting to be read to the jury the reports and recommendation of the railroad commission in this matter.

6. The State by appellant's charter granted to appellant the power to charge and collect the definite sums per mile specified therein for the transportation of persons and of property, and that express grant forms part of the State's contract with it which the State can not impair. (Reagan v. Farmers' Loan and Trust Co., 154 U. S., 393; Stone v. Railroad Co., 62 Miss., 207.)

7. Even if that portion of the charter were in no sense a contract, it would be the law until amended or repealed, and the statute in question here can not be regarded as intended to repeal such a charter provision. The rate authorized by the charter must be regarded as a reasonable rate until the legislature fixes some other standard of reasonableness.

W. J. HENDRICK, W. H. SWEENEY AND H. W. RIVES FOR APPELLEE.

1. The judge of the lower court heard the application for a change of venue and the Court of Appeals ordinarily will not disturb his

finding on that question. (Johnson v. Commonwealth, 82 Ky., 119; Dilger v. Commonwealth, 88 Ky., 557.)

2. In the administration of government the use of police powers may, for a limited period, be delegated to a municipality or other body, but there always remains with the State the right to revoke those powers and exercise them in a more direct manner, and more conformably to its wishes. Where property is affected with a public use, the business in which it is used is subject to legislative control. So long as the use continues the power of regulation remains, and it may extend to the prevention of extortion by unreasonable charges, and favoritism by unjust discrimination (The Lake Front Cases, 146 U. S., 387-476; Railroad Co. v. Smith, 128 U. S., 174, 97 U. S., 25 and 659; 101 U. S., 814; 27 Vt., 140; 59 N. Y., 92, 67 Ill., 37; 88 Ill., 221, 16 Ind., 84, 25 Ill., 140.)

3. The power of regulation is a power of government, continuing in its nature, and if it can be bargained away at all, it can only be by words of positive grant, or something which is in law equivalent. (Stone v. Farmers Loan & Trust Co., 116 U. S., 307; Commonwealth v. Covington and Cincinnati Bridge Co., 14 Ky. L. R., 836.)

4. All other modes of transportation having been practically abandoned in this age, we are compelled to patronize railroads; and being so compelled, money thus paid to get necessary services or transportation is in no sense voluntarily paid. (Mobile R. R. v. Stiner, 61 Ala., 559.)

5. Under the amendment in this case provision is made for the consolidation with other companies "so as to make the same *one* company with a consolidated *stock* and property, with *one* board of directors to manage and control the affairs of *said company.* . . . . . . . . With power to adopt such *corporate name* as they might select, and *in such name* have all the powers and privileges heretofore conferred upon such company by the laws of the States of Kentucky and Tennessee." It is clear that the legislature intended that the consolidated company should be a new company, and it necessarily is a new company, although it retains the name of the Louisville & Nashville Railroad Co. (St. L. I. M. & S. R. R. Co. v. Berry, 113 U. S., 465-476; 8 Otto, 359; 5 Otto, 319.)

6. The question of the reasonableness of a rate of charge for transportation by a railroad company, involving as it does the element of reasonableness both as regards the company and the public, is eminently a question of judicial investigation, requiring due process of law for its determination. (134 U. S., 418; 94 U. S., 180; 108 U. S., 536; 116 U. S., 307; 154 U. S., 362; 94 U. S., 155 and 164, and 113 and 134; 96 U. S., 529; 110 U S., 354; 149 U. S., 680; 149 Ill., 361.)

7. The evidence shows beyond question that the charges complained
of were unreasonable, unjust, exorbitant and extortionate.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The indictment in this case charges that the appellant
"did unlawfully charge, collect and receive from A. Van-
cleave & Co. the sum of forty-one and 70-100 dollars as toll
or compensation for the transporation of a car-load of coal,
weighing 53,800 pounds, being at the rate of one and 55-100
dollars per ton, from Pittsburg, Ky., to Lebanon, in Marion
county, over the line of said railroad, a distance of —miles,
the said rate of one and 55-100 dollars per ton for the said
transportation of said coal, being more than a just and
reasonable compensation therefor, contrary to the form of
the statute, etc."

A conviction followed, and from the judgment on the
verdict of the jury for the sum of $500, the company has
appealed.

Its complaints are that the statute prohibiting extortion
by railroad companies, and providing a penalty therefor,
prescribes no standard as to what is just and reasonable
for the guidance of the corporation, and altogether fails to
define what it may and what it may not do; that it is, there-
fore, void for uncertainty; that, even if the statute is valid,
the indictment states no facts showing the appellant guilty
of the offense charged, but only the conclusion of the pleader
that the rate charged was more than a just and reasonable
compensation.

It is also urged that the trial court erred in refusing to
grant to appellant a change of venue upon the testimony
heard, and in the admission of incompetent evidence; and
it further insists that, on the facts of the case, the charge
is reasonable and just, within the meaning of the statute,

and especially so as the charge is within the rate allowed by the company's charter.

The chief question to be considered is the one affecting the validity of the statute, the provisions of which are found in sections 816 and 819 of the Kentucky Statutes. The first named section reads as follows: "If any railroad corporation shall charge, collect or receive more than a just and reasonable rate of toll or compensation for the transportation of passengers or freight in this State, or the use of any railroad car upon its track, or upon any track it has control of or has the right to use in this State, it shall be guilty of extortion."

Section 819 fixes the penalty for the first offense at not less than $500, nor more than $1,000, and increases the penalty for subsequent infractions of the law. The circuit court of any county into or through which the road runs, and the Franklin circuit court, are given jurisdiction of the offense, the prosecution to be by indictment or action in the name of the Commonwealth, upon information filed by the board of railroad commissioners.

That this statute leaves uncertain what shall be deemed a "just and reasonable rate of toll or conpensation" can not be denied, and that different juries might reach different conclusions, on the same testimony, as to whether or not an offense has been committed, must also be conceded.

The *criminality* of the carrier's act, therefore, depends on the jury's view of the reasonableness of the rate charged; and this latter depends on many uncertain and complicated elements.

That the corporation has fixed a rate which it considers will bring it only a fair return for its investment does not alter the nature of the act. Under this statute it is still a

crime, though it can not be known to be such until after an investigation by a jury, and then only in that particular case, as another jury may take a different view, and, holding the rate reasonable, find the same act not to constitute an offense.   There is no standard whatever fixed by the statute, or attempted to be fixed, by which the carrier may regulate its conduct; and it seems clear to us to be utterly repugnant to our system of laws to punish a person for an act, the criminality of which depends, not on any standard erected by the law which may be known in advance, but on one erected by a jury.   And especially so as that standard must be as variable and uncertain as the views of different juries may suggest, and as to which nothing can be known until after the commission of the crime.

If the infliction of the penalties prescribed by this statute would not be the taking of property without due process of law and in violation of both State and Federal Constitutions we are not able to comprehend the force of our organic laws.

In Louisville & Nashville R. R. Co. v. Railroad Commission of Tennessee, 16 Am. & Eng. R. R. Cases, 15, a statute very similar to the one under consideration was thus disposed of by the learned judge (Baxter): "Penalties can not be thus inflicted at the discretion of a jury.   Before the property of a citizen, natural or corporate, can be thus confiscated, the crime for which the penalty is inflicted must be defined by the law-making power.   The Legislature can not delegate this power to a jury.   If it can declare it a criminal act for a railroad corporation to take more than a "fair and just return" on its investments, it must, in order to the validity of the law, define, with reasonable certainty, what would constitute such "fair and just return."   The act under review does not do this, but leaves it to the jury to

supply the omission. No railroad company can possibly anticipate what view a jury may take of the matter, and hence can not know in advance of a verdict whether its charges are lawful or unlawful. One jury may convict for a charge made on a basis of four per cent., while another might acquit an accused who had demanded and received at the rate of six per cent., rendering the statute, in its practical working, as unequal and unjust in its operation as it is indefinite in its terms."

The Supreme Court of the United States, in Railroad Commission Cases, 116 U. S., 336, refers to this Tennessee case and substantially approves it by distinguishing the case then before the court from the Tennessee case.

This case is also used to support the text in 8 Am. and Eng. Ency. of L. P., 935, where it said: "Although a statute has been held to be unconstitutional which left it to the jury to determine whether or not a charge was excessive and unreasonable in order to ascertain whether a penalty is recoverable, yet where the action is merely for recovery of the illegal excess over reasonable rates this is a question which is a proper one for a jury."

Mr. Justice Brewer, in the case of Chicago, &c., R. R. Co. v. Dey, 35 Fed. Rep., 866, had under consideration the provisions of a statute similar to the one we have before us, and while the statute was upheld it was only because there was a schedule of rates provided in the act which rendered the test of reasonableness definite and certain. The learned judge then said: "Now the contention of complainant is that the substance of these provisions is that if a railroad company charges an unreasonable rate it shall be deemed a criminal and punished by fine, and that such a statute is too indefinite and uncertain, no man being able

to tell in advance what in fact is or what any jury will find to be a reasonable charge. If this were the construction to be placed upon this act as a whole it would certainly be obnoxious to complainant's criticism, for no penal law can be sustained unless its mandates are so clearly expressed that any ordinary person can determine in advance what he may and what he may not do under it."

In Dwar. St., 652, it is laid down 'that it is impossible to dissent from the doctrine of Lord Coke that acts of Parliament ought to be plainly and clearly and not cunningly and darkly penned, especially in legal matters.' See also United States v. Sharp, Pet. C. C., 122; The Enterprise, 1 Paine, 34; Bish. St. Cr., section 41; Lieb. Herm, 156."

And the learned judge concludes that there is very little difference between a provision of the Chinese Penal Code, which prescribed a penalty against any one who should be guilty of "improper conduct," and a statute which makes it a "criminal offense to charge more than a reasonable rate."

The same learned judge, discussing the kindred subject of unreasonable differences in rates, in Tozer v. United States, 52 Fed. Rep., 917, said: "But in order to constitute a crime the act must be one which the party is able to know in advance whether it is criminal or not. The criminality of an act can not depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty."

When we look to the other side of the question we find the contention of the State supported by neither reason nor authority. No case can be found, we believe, where such indefinite legislation has been upheld by any court where a crime is sought to be imputed to the accused.

Manifestly, in actions by shippers against carriers for recovering back the excess of charges over reasonable rates, the rule is quite different. In such actions the statute may be invoked as merely declaratory of the common law, and the question of reasonable rates is one to be heard by the court or jury. It is in fact a question of contract. Common carriers are "bound to carry when called upon for that purpose, and charge only a reasonable compensation for the carriage. These are incidents of the occupation in which they are authorized to engage." (94 U. S., 180.)

If this charge is more than is reasonable there is a violation of the contract, and the suit of the person aggrieved is because of such violation.

In some States the shipper is entitled to recover double or triple the amount of the excess, but this does not change the nature of the action.

The nearest approach to an authority for the State's contention is a case in which the shipper sued the carrier, and is reported in Railroad v. Jones, 149 Ill., 361. There the first section of the act under consideration, of which our statute is a substantial copy, was attacked for want of certainty in defining the act of extortion, the contention being that the determination of what is a fair and reasonable rate must depend upon a variety of considerations such, for instance, as the character of the freight, the necessity of dispatch, the cost of cleaning and unloading cars, the risk of liability as affected by the value of the articles carried, the volume of business, the amount of car room required, the difficulty of the service, the special attention demanded, etc.

The court said "that the difficulties which stand in the way of determining what are reasonable rates also stand

in the way of embodying in a legal enactment such an exact definition as is insisted upon. . . . The first section of the statute is merely declaratory of a well-known principle of the common law.   At common law the common carrier was obliged to receive and carry all goods offered for transportation upon receiving a reasonable hire (Messenger v. Penn. R. R. Co. 31 N. J. L., 407), and the court was to judge of the reasonableness of the freight charges. . . .  Undoubtedly the Legislature has the power to declare what is a reasonable compensation, or to fix the reasonable maximum rates of charges (Dow v. Bridleman, 125 U. S., 680); but in the absence of statutory regulation upon the subject the courts must decide what is reasonable."

As we have seen, the action was one by a shipper against the carrier, and was in the nature of a suit for damages for a breach of the contract.   The court, however, made its meaning clear by references to and approving its former construction of the act as found in Railroad, &c. v. The People, 77 Ill., 443, and of that case said:   "But we held in Railroad Co., &c. v. The People, that the first section of this statute should be construed in connection with the eighth, and that the latter section, by providing for the making by the railroad and warehouse commissioners of a schedule of reasonable maximum rates for each of the railroad corporations in the State, furnished a uniform rule for the guidance of the railroad companies.  In that case we said: 'When that is done there will be a standard of what is fair and reasonable, and the statute can be conformed to and obeyed.' "

As this Illinois section appears to have been substantially reenacted here without, however, accompanying it with the provision for a standard, we quote the more freely from the Illinois court construing the section.

In the 77 Illinois case the court said: "That section, by itself, makes the offense to consist in taking more than a fair and reasonable rate of toll and compensation, without reference to any standard of what is fair and reasonable. In such case, it may be seen, different persons would have different opinions as to what is a fair and reasonable rate. Courts and juries, too, would differ, and at one time or place a defendant might be convicted and fined in a large amount for the same act, which, in another place or at another time, would be held to be no breach of the law, and what might be thought a fair and reasonable rate on one road might be considered otherwise upon another road. There would be no certainty of being able to comply with the law. A railroad corporation, with purpose of conforming to the law, might fix its rates at what it believed to be reasonable, and yet be subjected to the heavy penalties here prescribed. The statute furnishes evidence that it did not intend to leave the railroad in this state of uncertainty and danger and exposed to such seeming injustice. . . . The eighth section provides how reasonable rates shall be ascertained; what they shall be; that the railroad and warehouse commissioners should make for each of the railroad corporations in the State a schedule of reasonable maximum rates, thus furnishing a uniform rule for the guidance of the railroad companies."

These authorities and the argument abundantly supporting them are sufficient. Other objections to the judgment below need not be discussed, as the one noted is fatal, and the statute can not be enforced as a penal statute.

It may be observed further, however, that it would seem singular if such a statute, even if in all respects valid, could be enforced against a carrier whose rates, as fixed in its

charter, are in excess of the rates alleged to be excessive in the indictment. And this, not because such rates are secured by an irrepealable contract, a matter not now considered, but simply because they at least remain the legal rates until changed by law.

The judgment is reversed, with directions to dismiss the indictment.