UNITED STATES v. SWEET VALLEY WINE CO.

(District Court, N. D. Ohio, W. D. Feb. 26, 1913.)

No. 1,327.

1. Food (§ 1*)—Pure Food and Drug Act—Validity.
   Pure Food Act (Act Cong. June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1911, p. 1354]) is constitutional.
   [Ed. Note.—For other cases, see Food, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*]

2. Food (§ ½, New, vol. 15 Key-No. Series)—Misbranding—Wine.
   Under Pure Food Act June 30, 1906, c. 3915, § 6, 34 Stat. 769 (U. S. Comp. St. Supp. 1911, p. 1356), defining the term "food" to include all articles used for food, drink, confectionery, or condiment by man or other animals, whether simple, mixed, or compound, the term applies to and includes wine.
   [Ed. Note.—For other definitions, see Words and Phrases, vol. 3, p. 2856.]

3. Statutes (§ 47*)—Certainty—Pure Food—"Wine."
   Pure Food Act June 30, 1906, c. 3915, § 8, 34 Stat. 771 (U. S. Comp. St. Supp. 1911, p. 1357), prohibiting the misbranding of articles of food or drink so as to deceive or mislead the purchaser, was not invalid, so far as domestic wine was concerned, for failure to specify an established standard as applied to wine put out in bottles resembling genuine Rhine wine, and described as "Hochheimer Typo, Ohio Serial No. 124, Guaranteed," which in fact was a mixture of grape juice and a fermented solution of dextrose, otherwise known as starch sugar; the term "wine" being ordinarily construed to mean the fermented juice of undried grapes.
   [Ed. Note.—For other cases, see Statutes, Cent. Dig. § 47; Dec. Dig. § 47.*
   For other definitions, see Words and Phrases, vol. 8, pp. 7487–7488; vol. 8, p. 7836.]

The Sweet Valley Wine Company was indicted for misbranding wine in violation of the Pure Food Act, and demurred to the indictment. Overruled.

U. G. Denman, Dist. Atty., and John S. Pratt, Asst. Dist. Atty., both of Toledo, Ohio, for the United States.
Lannen & Hickey, of Chicago, Ill., for defendant.

KILLITS, District Judge. The defendant is indicted on four counts for misbranding under the act of June 30, 1906 (c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1911, p. 1354]), commonly called the Pure Food Act.

---

Under the first count the defendant is charged with shipping an article of food branded as follows: "Select Riesling Wine, Special Vintage, Serial 124." It is charged that under section 8 of said act this article was misbranded so as to deceive and mislead the purchaser, in that it purported to be Riesling wine of select quality, whereas in fact it was a compound of wine and a fermented solution of commercial dextrose, otherwise known as starch sugar.

Under the second and third counts it was charged: That defendant's shipments purported to be Rhine wines of the character known as Hochheimer and Diedesheimer, respectively, whereas the article in each instance was merely an Ohio manufactured product, and a mixture of wine and a fermented solution of commercial dextrose. The character of alleged misbranding in the second count is typical of both the second and third counts. On the neck of the bottle was a label containing these words "Hochheimer Typo, Ohio Serial No. 124, Guaranteed," etc. On the box containing the bottles were the words: "Hochheimer Typo Wine." That the bottle itself was in the design and form of the bottles containing genuine Hochheimer wine, and contained as part of the label a picture representing a German village.

As to the fourth count, the charge is simply that the defendant shipped wine bottled with a label designating the same as "Typo-Niersteiner Wine, Ohio Serial No. 124, Guaranteed," etc., whereas in fact the article therein contained was a mixture of wine or of grape juice and a fermented solution of fermented dextrose, otherwise known as starch sugar.

To these counts a demurrer has been interposed, on the grounds of: (1) The alleged unconstitutionality of the act; (2) that section 8 thereof, under which this prosecution is attempted, is void for want of definiteness in fixing legal standards for the various wines enumerated in said counts; (3) for a failure of the indictment to aver that wines alleged to have been shipped are not normally composed of a mixture of wine and commercial dextrose, and for failure to allege in either of said counts what ingredients or constituents go to compose the normal wines of the various kinds mentioned in said counts; (4) for a failure to allege that other explanatory statements did not appear on the labels which might inform the purchaser of the exact nature of said wines; (5) for a failure to allege that the various wines therein mentioned and shipped by defendant were foods within the meaning of the act of Congress; (6) that the alleged picture of a German village should be more particularly described, and that the allegation that the picture is a representation of a German village is a mere conclusion; (7) for failure to allege that wines designated as Hochheimer Typo Wine and Diedesheimer Typo Wine, respectively, are not identical with Hochheimer wines and Diedesheimer wines, respectively.

[1] The constitutionality of this act is so generally conceded and so well established that the demurrer on that ground has not been seriously pressed to our consideration, and will not be further entertained.

[2] Section 6 of the act says:

"The term 'food,' as used herein, shall include all articles used for food, drink, confectionery, or condiment by man or other animals, whether simple, mixed, or compound."

Applying that language and the principle that, unless compelled otherwise, we must take words in an indictment at their ordinary and usual meaning, we find no merit in the contention that this indictment should aver that the wine in question was a food within the purview of the act.

[3] Nor will we spend much time in considering the other grounds of demurrer, save that which insists that section 8 of the act is void for not establishing a standard for the various wines enumerated in the counts of this indictment. The other grounds are not urged upon our consideration in argument, and doubtless have been abandoned; at any rate they do not appeal to us as having much force.

Respecting the second ground of the demurrer, the argument as stated in the brief of counsel is as follows:

"Our second ground of demurrer goes to all the five counts of the indictment, and it is that the said act of Congress is void as applied to this particular case because it fails to fix standards for the various wines enumerated in said counts. We do not contend by this ground of demurrer that the said act of Congress is unconstitutional as applied to other cases, but what we maintain is that it is void for uncertainty and indefiniteness as applied to this case."

And to that point are cited a number of cases in which the proposition is urged that a penal act is void for uncertainty in which the offense depends, "not on any standard erected by the law which may be known in advance, but on one erected by a jury, and especially so as that standard must be as variable and uncertain as the views of the different juries may suggest, and as to which nothing can be known until after the commission of the crime." Louisville & Nashville Rd. Co. v. Commonwealth, 99 Ky. 132, 35 S. W. 129, 33 L. R. A. 209, 59 Am. St. Rep. 457. This citation is typical of other authorities depended upon by counsel for defendant. They are cases in which the question of what is a just and reasonable rate or toll of compensation for the transportation of passengers or freight is left open to determination by the various tribunals before which the case comes by the statute which makes an undue charge an offense.

Again we say that the words used both in the statute and in this indictment must be given their ordinary and common meaning in the absence of something to demand a special definition. The word "wine" is, by general acceptance and standard definition, understood to mean the fermented juice of the undried grape. The contention of the defendant would make it practically impossible for Congress to pass an act to correct the evils at which this statute is aimed, for the reason that it would be necessary, not only to amplify the act with very particular and minute definitions of standards, but to be constantly amending it and supplementing it as new devices and compounds were placed upon the market. All that can be done, granting that Congress

has the right to strike at the evils in question, is to pass a statute in general terms, using words of ordinary acceptance.

But we are referred to section 5796, General Code of Ohio, for a definition of the word "wine," and it is insisted that under the allegations of this indictment the defendant is within that definition. Perhaps we may grant that defendant is protected against the operation of the Pure Food Act respecting misbranding if it complies with the law of Ohio defining what wine is, and that immunity may possibly favor defendant without reference to Food Inspection Decision 120 of the Department of Agriculture, respecting the labeling of Ohio and Missouri wines, but the trouble is that, accepting the description of the indictment as true, defendant's product is not within the terms of the Ohio Code definition, which reads:

"The term 'wine' means the fermented juice of undried grapes. The addition of pure white or crystallized sugar to perfect the wine, or using ingredients necessary solely to clarify and refine it which are not injurious to health, shall not be adulterations. Such wines shall contain at least seventy-five per cent. of pure grape juice, and shall not contain artificial flavoring." Sec. 5796, General Code of Ohio.

Defendant's article of food alleged to be misbranded is not shown to be the fermented juice of undried grapes to which had been added "pure white or crystallized sugar" to perfect it, but it it described as wine ("the fermented juice of undried grapes") to which has been added "a fermented solution of commercial dextrose, otherwise known as starch sugar." It cannot be claimed seriously that there is no difference between adding to the fermented juice of undried grapes "pure white or crystallized sugar," which seems to mean sugar in its commercially dry state, and making a compound of pure wine and a fermented solution of commercial dextrose, or even a fermented solution of commercial sugar. The latter not only involves an additional element not found in the statute in the form of the water used for the solution, but brings into the compound that fermentation which may be peculiar to the dextrose or sugar solutions.

If we were forced to a construction of the Ohio statute, we see substance in the insistence that it provides only for cane or beet sugar of the accepted saccharine content as the perfecting addition rather than dextrose, which is not only but little over half the saccharine efficiency of sugar, bulk for bulk, but contains, in the commercial form at least, a large proportion of dextrin, which cannot be said to be in any sense an equivalent of sugar or within the scope of any reasonable construction of the Ohio statute. In view of the very prevalent impression, 20 years ago, when the act was passed, that glucose or dextrose was not altogether wholesome, a doubt which is not yet altogether dispelled, it is not likely that the Legislature contemplated its use under the terms "pure white or crystallized sugar."

The demurrer is overruled, and defendant will plead to the indictment March 15th next.