LIEGHLEY, J.
For convenience the parties will be named in the order they stood below.
Margaret Henry, the defendant, was arrested upon an affidavit charging her with the violation of sub-section 27 of ordinance No. 1341 in the following language: ‘ ‘ That she did unlawfully fail to stop and render such reasonable assistance as could be given after her said automobile had knocked down one Arthur Zipser.” The defendant was found guilty as charged and sentenced, from which judgment error is prosecuted to this court to reverse the same.
The language of said ordinance is as follows:
‘ ‘ In case of accident to or collision with person or property upon any of the public streets, parks or parkways of the city of Cleveland, due to the driving or operating thereon of any vehicle, the person so driving or operating such vehicle shall stop and give such reasonable assistance as can be given, and shall, upon request of the person injured or any other person, give such person his name and address, and, if not the owner, the name and address of the owner together with the registered number of such vehicle in case such vehicle is motor-propelled. ’ ’
Many errors are assigned for review by defendant, but we shall confine our consideration to one only, the validity or invalidity of the ordinance under which this prosecution was had.
If the language of the ordinance required the driver of an automobile to do only such things or perform such acts as would tend to identification, we would have very little difficulty with this question. For identification is essential for the proper exercise and control of traffic. Statutes that require the driver of an automobile to stop when an accident occurs and give his name upon request, have been held constitutional. Commonwealth v. Horsfall, 213 Mass. 232 [100 N. E. 362; 1914A Ann. Cas. 682], A statute of the slate of California, the language of which was very similar to the language of this ordinance, was considered by *167 the appellate court of that state in the case of People v. Diller, 142 Pac. 797. However, the question presented here was not considered directly by'the court. The inquiry there was whether the requirement that the driver give to the injured person his name, etc., was obnoxious to Art. 1, Sec. 13, of the constitution, which provides that no person shall be compelled in any criminal case to be a witness against himself.
Likewise other cases were cited which dealt with kindred subjects, but not the exact question here. Some of them were decided at a time when the automobile industry was in its ineipieney and proceeded upon the theory that the legislature had the power to deny entirely the right of the automobile upon the public highways. That therefore any restrictions placed upon their use were lawful. At the present date, in view of the universal use of the automobile, it will hardly be contended that the legislature has now that power. At least, if exercised, it would fall somew'hat short of popularity.
Attention is called, however, to the language of the ordinance, which reads, “shall stop and give such reasonable assistance as can be given.” What does that language mean? Does it mean aid the injured party to the curb stone ? Does it mean convey him to a hospital, hiring a nurse, securing a doctor, paying doctor’s bill? Does it mean render assistance at the point of accident or when taken away by the emergency ambulance at the hospital ? It is apparent that different minds would reach different conclusions in respect to the meaning of that phrase. It at least does mean that it requires the driver of the machine to give his time to the injured party, whatever the circumstances of the accident may have been. It will be noticed that no distinction is made between a driver who is blameless and one who may be solely at fault. It does not distinguish between one who knows or does not know that another has been injured. Some heedless individual may dash from a side street into the rear of a passing automobile and receive injuries entirely from his own carelessness and without the knowledge of the driver, yet if the driver does not stop and render such reasonable assistance as can be given, he is amenable to the provisions of this ordinance.
While the defendant was charged with a failure to stop and *168 also with, a failure to render such reasonable assistance, etc., the proof ivas directed more particularly to the failure in the latter respect. The ordinance does not provide for nor was she charged with knowingly doing either. It is claimed that this-is error.
The law is well established that in cases such as violations of. the food laws, the sale of skimmed milk and the sale of intoxicating liquors, etc., knowledge is presumed, but it will be observed that in all such cases the subject-matter about which some act is done by the defendant, is peculiarly within, his knowledge and under his control, or the circumstances surrounding the transaction are such as he is bound to know. One who removes journal brasses from a railroad car is bound to know whether he has permission. If a public officer converts public funds in his hands as such officer to his own use, the act of taking sufficiently characterizes the intent. In this ease the driver unfortunately in a collision may or may not know. The impact of a human being striking the side of a large motor truck or struck by the rear fender of such a vehicle, is so slight as to thereby render knowledge thereof improbable.
An act making it a crime to remove journal brasses or any attachments from the rolling stock of a railroad was judicially interpreted by the Supreme Court in the case of Kilbourne v. State, 84 Ohio St. 247 [95 N. E. 824; 35 L. R. A. (N. S.) 766]. Section 12561 G. C. made the removal a crime, and in the latter part of the section it was provided that whoever buys, receives or unlawfully has in his possession any of said articles shall be punished. Knowledge was not made an element of the crime of receiving. It was a case where the purchaser may or may not know that the goods were stolen or removed from railroad property. Likewise in this case, the driver may or may not know that another was injured, for the acts charged to be criminal are subsequent to the point of time of inquiry. The fact of being in a collision is not made a crime, but the parties therein are left to solve their relative rights in a-civil action. By this ordinance, however, the. acts of a driver are made criminal without any reference to his responsibility in the matter. ‘ ‘ Knowingly, ’ ’ *169 or words of equivalent meaning, are necessary- words in this ordinance.
Next, the driver is required to perform service regardless of his culpability or non-culpability and regardless of the culpability or non-culpability of the injured.
In the case of the State v. Boone, 84 Ohio St. 346, 347 [95 N. E. 924; 39 L. R. A. (N. S.) 1015], an enactment requiring a physician or midwife in attendance upon a ease of confinement to inquire and acquire certain statistics relating to the age and color or race, legitimacy or illegitimacy of the child, etc., and report the same, was held invalid and an unnecessary, unreasonable and . arbitrary exercise of the police power. Quoting from the opinion at page 359, the court says:
“Wo have thus briefly indicated the reasons for our belief, that the Great Charter of the Northwest Territory is still under, and above, and before, all laws or constitutions which have yet been made in the states which are parts of that territory; and that under its guaranties the state has not the right to draft a ■ citizen into particular service without substantial compensation. At least, it is clear to us that the provisions of this statute which require a professional man to search out non-professional information and certify it to state authorities, is unnecessary, unreasonable and arbitrary, and is not, therefore, a valid exercise of police power, ’ ’
An act making railroad companies liable for all expenses of the coroner and his inquest, and the burial of all persons who may die on its cars or who may be killed by collision or other accident, was held unconstitutional and void in so far as the act attempted to make said companies liable in cases where they have violated no law or have been guilty of no negligence on their part. In the case of Ohio & Miss. Ry. v. Lackey, 78 Ill. 55 [20 Am. Rep. 259], quoting from the opinion on page 57:
“It may, very pertinently, be asked, why this distinction? On what principle is it that railroad corporations, wdthout any fault on their part, shall be compelled to pay charges which, in other cases, are borne by the property of the deceased, or, in default thereof, by the county in which the accident occurred?
“An examination of the section will show that no default or *170 negligence of any kind need be established against the railroad company, but they are mulcted in heavy charges if, notwithstanding all their care and caution, a death should occur on one of their cars, no matter bow caused, even if by the party’s own hand.”
In this ease the time required to do the things exacted by the ordinance is property. The service required, whatever that may be, is property. Any expense incurred made necessary by the ordinance, whatever that may be, is property. We will all agree that if a driver, who knows of: a party being injured, stops and returns and renders assistance, he is performing a very commendable humanitarian act, but we are not called upon to pass upon that question. What constitutes a crime and whether or not the charge here meets the inhibition of the constitution concerns us. .
Further, it will be noticed, repeating, that the language of the ordinance is “give such reasonable assistance as can be given,” and that the ordinance sets no standard of what is reasonable assistance.
“Reasonableness” has been considered by courts in other states, but mostly in civil proceedings. In Chicago, B. & Q. Ry. v. People, 77 Ill. 443, and Chicago, B. & Q. Ry. v. Jones, 149 Ill. 361 [37 N. E. 247; 24 L. R. A. 141; 41 Am. St. 278], what constitutes a reasonable rate was discussed. The same of Burlington, C. R. & N. Ry. v. Dey, 82 Ia. 312 [48 N. W. 98; 12 L. R. A. 436; 31 Am. St. 477]. The statute or the railroad commission of the state for the most part fixed the standard, however. See Louisville & N. Ry. v. Commonwealth, 33 L. R. A. 209 [35 S. W. 129; 99 Ky. 132; 59 Am. St. 457], and note.
The Supreme Court of Ohio considered in two eases a statute empowering a railroad to fix a reasonable rate for a haul less than thirty miles. It was held the question of reasonableness was a question of fact for the jury. Both were civil eases, and in neither was the constitutionality of the act made a subject of inquiry Smith v. Railway, 23 Ohio St. 10; Peters, Ricker & Co. v. Ry. Co. 42 Ohio St. 275 [51 Am Rep. 814].
The fact that it is a jury question, whereby one jury would declare a given set of facts reasonable, and another jury find the *171 same set of facts a violation as unreasonable or falling short of reasonable, leaves the ordinance without a standard. The individual does not know, and can not know, what in fact constitutes the crime — not until the verdict of the jury is read.
In the further discussion of this subject we shall take the liberty to paraphrase the language of the court in the ease of Louisville & N. Ry. v. Commonwealth, supra. In this ease the court had under consideration a statute which provided that if any railroad corporation shall charge, collect or receive more Iban a just apd reasonable rate of toll, etc., it shall be guilty of extortion. In a discussion of the legal effect of this phrase •‘reasonable rate” this court adopts, in substance, the following language:
“That this statute leaves uncertain what shall be deemed a reasonable rate can not be denied, and that different juries might reach different conclusions on the same testimony as to whether or not an offense has been committed, must also be conceded. The criminality of the driver’s act, therefore, depends on the jury’s view of the reasonableness of the assistance given; and this latter depends on many uncertain and complicated elements. Under this statute it is still a crime, though it can not be known to be such until after an investigation by a jury, and then only in that particular ease, as another jury may take a different view, and, holding the assistance reasonable, find the same act not to constitute an offense. There is no standard whatever fixed by the statute or attempted to be fixed by which the driver may regulate his conduct; and it seems clear to us to be utterly repugnant to our system of laws to punish a person for an act, the criminality of which depends, not on any standard erected by the law which may be known in advance, but on ,one erected by a jury. And especially so as that standard must be as variable and uncertain as the views of different juries may suggest, and as to which nothing can be known until after the commission of the crime.
“If the infliction of the penalties prescribed by this ordinance would not be the taking of property without due process of law and in violation of both state and federal constitutions, we are not able to comprehend the force of our organic laws.”
*172 Many authorities are cited by the court in this opinion in support of the absolute necessity of the ordinance fixing the standard of reasonableness, and establishes as settled law that in criminal proceedings it is an indispensable essential. This' case is cited- in Leading Case Law, and is controlling on the subject.
We therefore have reached the conclusion that this ordinance is invalid for three reasons: First, that by reason of the acts aimed to be punished, it fails to use the word “knowingly,” or words of similar import. Second." That-it drafts the time and services and perhaps money of a citizen without substantial compensation, whether he is to blame or blameless for the injury. Third. That the ordinance fixes no standard of what constitutes reasonable assistance — an indispensable requisite in criminal law.
The judgment of the court below is therefore reversed as being contrary to law, and the defendant is discharged.
Grant and Carpenter, JJ., concur.