## GALLAHER *v.* STATE.

[No. 24,057.   Filed November 16, 1923.]

1. AUTOMOBILES.—*Operation.*—*Speed.*—*Violation of Law.*—*Evidence.*—*Statute.*—Evidence *held* sufficient to sustain conviction of violating the provision of §16, Acts 1913 pp. 779, 788, §10476c Burns 1914, making it a criminal offense to drive any motor vehicle upon any public highway "at a speed greater than is reasonable or prudent, having regard to the traffic and the use of the way." p. 630.

2. AUTOMOBILES.—*Statute Regulating Speed.*—*Validity.*—*Indefiniteness and Uncertainty.*—The statute regulating the speed of automobiles and other motor vehicles (Acts 1913 p. 779, §16, §10476c Burns 1914), which prohibits the operation of a motor vehicle upon any highway "at a speed greater than is reasonable or prudent, having regard to the traffic and the use of the way," defines the offense forbidden by it with such certainty that persons who read it may know exactly what evil was intended to be prohibited, and is not invalid for indefiniteness or uncertainty. p. 641.

From Steuben Circuit Court; *Dan M. Link,* Judge.

Prosecution by the State of Indiana against Raymond W. Gallaher. From a judgment of conviction, the defendant appeals. *Affirmed.*

*Alphonso C. Wood,* for appellant.

*U. S. Lesh,* Attorney-General, and *Sumner Kenner,* Assistant Attorney-General, for the State.

EWBANK, J.—Appellant was convicted on the charge of having violated that part of the Motor Vehicle Law which reads as follows:   "No person shall drive or operate a motor vehicle or motor bicycle upon any public highway in the state at a speed greater than is reasonable or prudent, having regard to the traffic and the use of the way or so as to endanger the life or limb or injure the property of any person. If the rate of speed of any motor vehicle or motor bicycle operated upon any public highway   *   *   *   outside the limits of an incorporated city or town or village   *   *   *

exceed twenty-five miles per hour, such rate of speed shall be *prima facie* evidence that the person operating such motor vehicle or motor bicycle is running at a rate of speed greater than is reasonable and prudent having regard to the traffic and use of the way, or so as to endanger the life or limb or injure the property of any person." §10476c Burns 1914, Acts 1913 p. 779, §16.

The prosecution was instituted before a justice of the peace, from whose court, it was appealed to the circuit court. The affidavit alleged that on a day named, upon and along a certain highway therein described, at a point within the county in which the action was begun, appellant "did then and there unlawfully drive and operate said automobile at a greater speed than was reasonable and prudent, having regard to the traffic and use of said way * * * did then and there unlawfully drive such automobile at a greater speed than 25 miles an hour on and along such highway", etc.

Appellant moved to quash the affidavit, for alleged insufficiency of the facts alleged to constitute a public offense, and for uncertainty, and reserved an exception to the order overruling his motion. After being found guilty, he moved for a new trial for the alleged reasons that the finding was not sustained by sufficient evidence and was contrary to law, but his motion was overruled and he excepted. He has assigned as error the overruling of each of said motions.

There was evidence that appellant drove southeast for about thirty rods on a branch road, turned south into the highway named and described in the 1. affidavit, and drove in it around a slight curve, down a hill into a "little hollow," or slight depression, to the lowest point, for a distance of about a mile, at the rate of speed of forty-three miles per hour, with one of the "road police" on a motorcycle trailing him; that one driving on that highway cannot see

around the curve when approaching it, nor see down into the hollow before reaching the brow of the hill; that trees obstruct the view around the curve; that from the place where the policeman stopped appellant, one could not see an automobile over the hill at the farther side of the hollow, if one were coming from the south; that this was a much traveled highway, being the direct road from Angola to Fort Wayne. This evidence is sufficient to sustain the finding of guilty if the statute is valid. Appellant has not suggested wherein the affidavit fails to charge the offense defined and forbidden by the statute.

But his contention, in support of each alleged error assigned, is that the provisions of the statute above set out which forbids driving "at a speed greater than is reasonable and prudent, having regard to the traffic and use of the way" is so uncertain and indefinite that it is void, in failing to define the crime it purports to forbid. To this point appellant has cited the following authorities. *United States* v. *Cohen Grocery Co.* (1920), 255 U. S. 81, 41 Sup. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045; *Railroad Com., etc.,* v. *Grand Trunk, etc., R. Co.* (1913), 179 Ind. 255, 263, 100 N. E. 852; *Miles* v. *State* (1920), 189 Ind. 691, 698, 129 N. E. 10; *Cook* v. *State* (1901), 26 Ind. App. 278, 282, 283, 59 N. E. 489; *Tozer* v. *United States* (1892), 52 Fed. 917; *Chicago, etc., R. Co.* v. *Dey* (1888), 35 Fed. 866, 1 L. R. A. 744; *Louisville, etc., R. Co.* v. *Commonwealth* (1896), 99 Ky. 132, 35 S. W. 129, 33 L. R. A. 209, 59 Am. St. 457; *Stoutenburgh* v. *Frazier* (1900), 16 App. Cas. (Dist. Col.) 229, 48 L. R. A. 220.

None of these cases arose out of a prosecution for fast driving or for the consequences of fast driving, but, in each of them, the court discussed the constitutional requirement that a crime created and forbidden by statute must define the offense forbidden with such

certainty as will fix an ascertainable standard of guilt, and be adequate to inform persons accused of having violated it of the nature and cause of the accusation against them.    In *United States* v. *Cohen Grocery Company, supra,* the court held that a statute was so indefinite and vague as to be void which provided that any person who should wilfully "make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries," or should conspire with others "to exact excessive prices for necessaries," should be punished by a fine or imprisonment or both.    A number of recent decisions of the Supreme Court of the United States, cited by the attorney-general in support of his contention that the act there under consideration was valid, were distinguished on the ground that "the cases relied on all rested upon the conclusion that, for reasons found to result either from the text of the statutes involved or the subjects with which they dealt, a standard of some sort was afforded."    In *Railroad Com., etc.,* v. *Grand Trunk, etc., R. Co., supra,* the court held that a statute requiring every railroad to be equipped with "an approved block system for the control of trains thereon" within a time fixed, under penalty, was so indefinite and uncertain as to the kind of block system intended that it was void.    In *Cook* v. *State, supra,* the court declared a statute invalid for uncertainty which forbade hauling on turnpikes and gravel roads at certain seasons any loads of more than 2,000 pounds on a "narrow tired" wagon, or more than 2,500 pounds on a "broad tired" wagon, without specifying any width of tires meant.    In *Tozer* v. *United States, supra,* the court set aside as uncertain to the degree that it was void a statute declaring it to be "unlawful for any common carrier  *  *  *  to make or give any undue preference or advantage" to any shipper or any kind of traffic, and making such acts punishable by a fine.

In *Louisville, etc., R. Co.* v. *Commonwealth, supra,* the court held that a statute which made it a criminal offense for a railroad to charge "more than a just and reasonable rate" of compensation for carrying freight or passengers, without fixing any standard by which to determine what was just and reasonable, was too uncertain to be valid. In *Stoutenburgh* v. *Frazier, supra,* the court held that where a statute for the punishment of vagrants, idlers, etc., contained a clause specifying that "all suspicious persons" should be punished by a fine, such provision was void, as being too indefinite. However, in *Chicago, etc., R. Co.* v. *Dey, supra,* after holding that a provision in the statute that if any carrier should charge "more than a reasonable rate" for carrying freight or passengers, it should be punished by a fine, was not sufficiently definite in itself, the court decided that it was so far supplemented by another section of the same statute requiring the railroad commission to make a schedule of reasonable and maximum rates, which should be *prima facie* evidence that the rates so fixed were reasonable and just maximum rates, as not to be invalid in that particular. In *Miles* v. *State, supra,* the court decided nothing as to the validity or invalidity of the statute therein referred to, but after suggesting that its validity had been questioned, decided only that a certain instruction was erroneous, even if the statute were valid. The statute of which the validity is challenged by appellant in the case at bar does not enact in general terms that "nobody shall drive carelessly," under penalty of being fined. Its provisions are limited to forbidding the operation of motor vehicles at a "speed" greater than is "reasonable" and "prudent," having regard to the "traffic" and the "use of the way," and declaring what speed shall be *prima facie* unlawful under each of the five sets of circumstances, as follows: In pass-

ing through (1) the closely built up business portions; (2) the residence portions; and (3) other parts of cities, towns and villages; (4) along highways in the country, and (5) around a corner or curve where the driver's view is obstructed. Acts 1913 p. 779, §16, *supra.* And there is much direct authority on the question whether or not such provisions in a statute are specific enough to be valid. In 1909 and succeeding years, laws very similar to the Indiana statute were enacted in many states, and questions as to their validity have been presented directly in prosecutions for violations of their provisions, or indirectly in appeals from convictions for manslaughter committed by fast driving, to the courts of last resort in California, Connecticut, Georgia, Illinois, Indiana, Massachusetts, Minnesota, Nebraska, Ohio, Washington, West Virginia, Wisconsin and Texas. In all of these states but Georgia, Texas and West Virginia, the statutes were upheld as against the objections urged against them. *Ex parte Daniels* (1920), 183 Cal. 636, 192 Pac. 442, 21 A. L. R. 1172; *State* v. *Campbell* (1909), 82 Conn. 671, 74 Atl. 927, 135 Am. St. 293, 18 Ann. Cas. 236; *People* v. *Camberis* (1921), 297 Ill. 455, 130 N. E. 712; *People* v. *Beak* (1920), 291 Ill. 449, 126 N. E. 201; *People* v. *Lloyd* (1913), 178 Ill. App. 66; *Smith* v. *State* (1917), 186 Ind. 252, 115 N. E. 943; *Commonwealth* v. *Cassidy* (1911), 209 Mass. 24, 95 N. E. 214; *State* v. *Goldstone* (1920), 144 Minn. 405, 175 N. W. 892; *State* v. *Waterman* (1910), 112 Minn. 157, 127 N. W. 473; *Schultz* v. *State* (1911), 89 Nebr. 34, 130 N. W. 972, 33 L. R. A. (N. S.) 403, Ann. Cas. 1912C 495; *State* v. *Schaeffer* (1917), 96 Ohio St. 215, 117 N. E. 220, L. R. A. 1918B 945, Ann. Cas. 1918E 1137; *State* v. *Randall* (1919), 107 Wash. 695, 182 Pac. 575; *Mulkern* v. *State* (1922), 176 Wis. 490, 187 N. W. 190; *Maxon* v. *State* (1922), 177 Wis. 379, 187 N. W. 753, 21 A. L. R. 1484.

The courts of West Virginia and Texas did not decide to the contrary, as the provisions of their respective statutes which were held so uncertain as to make the statutes void were not exactly the same provisions which are attacked in the case at bar. But the Georgia decisions were cited as authority, and the courts of Georgia expressly decided that the provisions under consideration in this case were too uncertain to be valid, and reversed convictions for manslaughter for that reason. *Hayes* v. *State* (1912), 11 Ga. App. 371, 75 S. E. 523; *Howard* v. *State* (1921), 151 Ga. 845, 108 S. E. 513; *State* v. *Lantz* (1922), 90 W. Va. 738, 111 S. E. 766; *Ex parte Slaughter* (1922), 92 Tex. Cr. App. 212, 243 S. W. 478; *Ex parte Carrigan* (1922), 92 Tex. Cr. App. 309, 244 S. W. 604.

In five cases from four states, the question whether a charge of misdemeanor in the language of the statute was uncertain, or was definite and certain enough to support a conviction was directly presented, and in each of those cases, the court decided that the offense was sufficiently charged. *People* v. *Beak, supra; People* v. *Lloyd, supra; State* v. *Waterman, supra; State* v. *Randall, supra; Mulkern* v. *State, supra.*

In another case where a violation of the statute by fast driving was charged, the Supreme Court of Massachusetts held that if the rate of speed was not greater than was reasonable and proper, having regard to the traffic, the use of the way and the safety of the public, the defendant could not be convicted, at whatever speed he drove, and the judgment was reversed because the trial court had refused to give an instruction to that effect. *Commonwealth* v. *Cassidy, supra.*

And in an action of *habeas corpus* to release the driver of an automobile who had been convicted of violating an ordinance that conflicted with the statute, if the statute were valid, the Supreme Court of California

(one judge dissenting) reviewed a number of the decisions which we have cited in this opinion, and upheld the statute on their authority. The petitioner was accordingly discharged from custody. *Ex parte Daniels, supra.*

These seven cases, all of which held statutory provisions such as the one under consideration to be valid, are the only ones we have found that directly involved the validity of that portion of the statute which is challenged by appellant in the case at bar. The question whether or not this provision of the statute was too indefinite to be valid has been discussed, however, in a number of the other cases, in which appeals were taken from convictions for manslaughter, committed in each instance by the operation of an automobile in violation of a statute forbidding motor vehicles to be driven on a public highway at a greater speed than was reasonable and prudent, having regard to the traffic and the use of the way, and in each of the cases cited below the court affirmed the judgment. *State* v. *Campbell, supra; People* v. *Camberis, supra; Smith* v. *State, supra; State* v. *Goldstone, supra; Schultz* v. *State, supra; State* v. *Schaeffer, supra; Maxon* v. *State, supra.*

In the case of *Schultz* v. *State, supra,* the Supreme Court of Nebraska, after quoting from the statute of that state language similar to what is quoted above from the Indiana statute, said: "It is argued that the act regulating the speed of motor vehicles is unconstitutional and void, because it is unreasonable. * * * The act seems to be a proper exercise of the police power of the state. The legislature no doubt was aware of this new method of public travel, and, recognizing the fact that the automobile furnishes a means of transportation by which a speed may be attained greater than by any other vehicle in common use, deemed it necessary to regulate its use in such a manner as to prevent

collisions and accidents like the one in the case at bar, and, having due regard to the safety of life and limb of all persons rightfully upon our public streets and highways, passed the act in question defining the methods of operation and the rate of speed which would in their judgment best subserve the public interest. In such case the courts should not under ordinary circumstances substitute their opinions for the judgment of the legislative branch of the government as to the reasonableness of such regulation."

In *Smith* v. *State, supra,* the Supreme Court of Indiana (one judge dissenting), after quoting from 12 Cyc 142 the proposition that "a penal statute is sufficiently certain, although it may use general terms, if the offense is so defined as to convey to a person of ordinary intelligence an adequate description of the evil intended to be prohibited", said: "The statute must be considered in its entirety, however, and when so considered, it clearly fixes a standard of care to be observed by the operator, having regard to the location of the highway on which he is driving at the time. As applied particularly to the charge in the present case, the statute, and the indictment drawn thereunder placed on the State the burden of proving that at the time and place alleged the appellant was operating his machine at a speed exceeding fifteen miles an hour. Such conduct on its face is definitely fixed as a violation of the statutory prohibition, as applicable to the place of the offense in this instance, and the fact that proof thereof is made *prima facie* rather than absolute evidence of guilt, serves only to permit a defendant to show, if he can, that under all the circumstances the speed at which he was operating his machine was not unreasonable or imprudent, or sufficient to endanger the person or property of another. Proof of this defense may necessarily rest in varying circumstances, but the same is true of

conditions which are sufficient to establish a plea of self defense on the part of one charged with murder. Considered as a whole, the statute falls within the rule quoted from Cyc and must be held sufficient."

In *State* v. *Schaeffer, supra,* the Supreme Court of Ohio said: "The constitutional guaranty is * * * the defendant's right 'to demand the nature and cause of the accusation against him, and to have a copy thereof.' The degree of particularity and specification required in the indictment is not fixed by the constitution, but rather is fixed by the decisions of our courts. There can be no violation of the constitutional provision in this respect, by reason of the generality and indefiniteness of any averment set forth in the statute, so long as the indictment does advise the accused of the 'nature and cause of the accusation' * * * In short the legislature wrote into the statute what has become known as the 'rule of reason' ever since The Standard Oil case, 221 U. S. 1, and Tobacco Trust case, 221 U. S. 107, were decided by the Supreme Court of the United States. * * * The suggestion that juries on the same state of facts may hold one way in one county, and another way in another county,—indeed, that in the same county, upon the same state of facts, one jury may hold one way and another hold another way, is no argument against this contention. * * * In our whole criminal procedure, even in capital and the most atrocious cases, where a man's life and liberty for life are involved, it is made the special province and duty of juries to determine what is 'reasonable', and whether or not there is a 'reasonable' doubt of the defendant's guilt. Of course, that is a conclusion—almost incapable of precise and specific definition. What one jury might hold to be a reasonable doubt another jury would hold the contrary; and still there is no other way than to leave the question to the jury to determine what is and

what is not a 'reasonable doubt.' Again, one of the most common defenses interposed in prosecutions for murder is that of self defense. It is the settled law of this state, as in most others, that if the defendant at the time of the killing *bona fide* believed himself to be in danger, whether he was or not, and had 'reasonable' grounds for so believing, and used force pursuant to such situation, it is excusable homicide; and yet it is for the jury to put themselves in the situation of the parties, particularly of the defendant, and determine from the evidence whether or not the defendant had 'reasonable' grounds. And so it is throughout our entire criminal jurisprudence."

In *People* v. *Beak, supra,* the Supreme Court of Illinois, after quoting section 10 of the Motor Vehicle Act of that state, almost exactly the same as the Indiana statute above set out, said: "If the only provision of section 10 were its first sentence there might be some merit in the argument of counsel that the construction of the statute is subject to conjecture. The section further provides the exact speed, which if exceeded in various classifications of localities shall be *prima facie* evidence of a violation of the law, and the evidence of plaintiff in error himself clearly indicates that he was violating the provisions of the statute as to the speed at which he was traveling at and just before the time he was arrested by the officer. * * * The statute is sufficiently clear on the actual questions involved to inform any one what the legislature intended to prohibit and punish."

In *Mulkern* v. *State, supra,* the Supreme Court of Wisconsin said: "If the fact that one jury might decide a case one way and another jury a different way upon the same state of facts rendered laws void for uncertainty, then we would have to discard not only many rules of civil law but also many criminal laws.

In nearly every criminal act an intent to commit it must be found in order to warrant a conviction. Not only may such intent be found upon circumstantial evidence, but the direct evidence may well give rise to a situation where one jury will find the intent and another fail to find it. So, too, in many cases where guilty knowledge is required to be found, as in receiving stolen goods or in running a house of ill-fame, juries may come to different conclusions upon the same state of facts. Even in murder of the second degree the definition of the crime is no more specific and certain than is that of the offense under consideration. It provides that the killing of a human being without intent to kill, 'when perpetrated by any act imminently dangerous to others and evincing a depraved mind, regardless of human life', shall be murder in the second degree. * * * Thus by sec. 4363, Stats. 1921, the involuntary killing of a human being by the culpable negligence of another is made manslaughter in the fourth degree. Juries may well differ as to what constitutes culpable negligence, yet a conviction thereunder is valid. * * * A speed of so many miles an hour is specific and meets the requirements of many situations, but not of all, even though the rate for country and city driving is made different, as it usually is. Many situations may arise both in the country and in the city where the statutory speed would be reckless driving. To meet these situations the statute in question was enacted."

Killing a human being by negligently doing an act which it was known would endanger his life was a crime at common law, and many times has been held punishable under statutory enactments in this state and in other jurisdictions. A statute which defines the crime of manslaughter as the unlawful killing of a human being involuntarily, but in the commission of some unlawful act, with such a reference to the com-

mon law definition of manslaughter that the words "unlawful act" are made to embrace a negligent act done in reckless disregard of the safety of others, has been held by this court sufficiently definite and certain to support a prosecution for causing death by culpable negligence. *State* v. *Dorsey* (1889), 118 Ind. 167, 20 N. E. 777, 10 Am. St. 111; *Potter* v. *State* (1904), 162 Ind. 213, 217, 218, 70 N. E. 129, 64 L. R. A. 942, 102 Am. St. 198, 1 Ann. Cas. 32; *Dunville* v. *State* (1919), 188 Ind. 373, 375, 123 N. E. 689.

And if the commission of a negligent act in disregard of the safety of others can be punished as a crime when the endangered person is killed, we see no reason why the statute may not also make a negligent act done under circumstances of known danger to others punishable as a crime if the endangered person is only injured, or if his property is destroyed or damaged, or if he or his property is thereby threatened with injury, where the negligent act consists of driving a vehicle operated by power machinery at a speed which the statute declares to be *prima facie* negligent because of surrounding circumstances which make the infliction of such an injury reasonably probable.

We conclude that the statute under consideration (Acts 1913 p. 779, §16, *supra*), taken as a whole, defines the offense forbidden by it with certainty to the 2. degree that persons who read it may know exactly what evil is intended to be prohibited, and fixes a standard of guilt by which an accused person may know the nature and cause of the accusation against him, and is not invalid for any of the reasons urged by appellant.

The judgment is affirmed.

Myers, J., dissents.